Marty H. COOPMAN, Plaintiff-Co-Appellant,

v.

STATE FARM FIRE & CASUALTY COMPANY and State Farm Mutual Automobile Insurance Company, Defendants-Third Party Plaintiffs-Respondents,†

AMERICAN STANDARD INSURANCE COMPANY, American Family Mutual Insurance Company, Greatway Insurance Company, Wisconsin Physicians Service Insurance Corp., State of Wisconsin Department of Health & Social Services—Division of Health, Mark A. La Fortune, Jeffrey Bostedt, Daniel Ertman, Gerald R. Wusterbarth, Scott Nicholi and Joel Anderson, Defendants,

GENERAL CASUALTY COMPANY OF WISCONSIN and Douglas Williquette, Defendants-Appellants,

Richard NERENHAUSEN, Defendant-Respondent.†

Court of Appeals

*No. 92–3232. Submitted on briefs September 7, 1993.—Decided October 5, 1993.*

(Also reported in 508 N.W.2d 610.)

†Petitions to review denied.
†Petitions to review denied.

548

549

For the defendant-appellant, Douglas Williquette, the cause was submitted on the briefs of *Mark A. Pennow* and *Steven J. Thomas* of *Denissen, Kranzush, Mahoney & Ewald, S.C.* of Green Bay.

For the plaintiff-co-appellant the cause was submitted on the briefs of *Jon M. Counsell* and *Gregory B. Conway* of *Liebmann, Conway, Olejniczak & Jerry, S.C.* of Green Bay.

For the defendant-respondent the cause was submitted on the brief of *Peter M. Farb* of *Gabert, Williams & Farb* of Appleton.

For the defendants-third party plaintiffs-respondents the cause was submitted on the brief of *Robert L.*

*McCracken* and *John F. Mayer* of *Nash, Spindler, Dean & Grimstad* of Manitowoc.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Marty Coopman appeals a summary judgment dismissing his complaint alleging conspiracy, negligence and aiding and abetting a tort against Richard Nerenhausen and State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company (State Farm). Coopman alleges trial court error because there is a factual dispute whether Nerenhausen participated in a civil conspiracy, withdrew from the conspiracy and caused Coopman's injuries. Because we conclude that there is sufficient proof to raise an issue of fact with regard to Nerenhausen's liability, we reverse the judgment dismissing Coopman's complaint.

This case arises from an incident that occurred in the early morning hours of April 7, 1990, in Oconto County, Wisconsin. Mark LaFortune was parked in the parking lot of the Old Store Pub in the city of Oconto speaking with Jeffrey Bostedt, who was the driver of a second car parked nearby, Nerenhausen, a passenger in the Bostedt vehicle, and other friends. During this conversation, a car driven by Douglas Williquette, in which Coopman was a passenger, drove by and allegedly a passenger in that car made an obscene gesture at the group. Bostedt asked LaFortune if they should chase the Williquette vehicle. Nerenhausen acknowledges that everyone agreed to chase the Williquette vehicle. There was a general agreement that the object of the pursuit was to stop the Williquette vehicle, find out why the obscene gesture had been directed toward the LaFortune and Bostedt vehicles and "kick their

ass." It was in anticipation of the pending fight that LaFortune stopped and picked up three friends, Daniel Ertman, Scott Nicholi and Gerald Wusterbarth, prior to commencing the chase. Meanwhile, Bostedt and Nerenhausen gave immediate chase to the Williquette vehicle.

Bostedt was close behind the vehicle when LaFortune caught and passed both the Bostedt and Williquette vehicles. LaFortune and Bostedt attempted to box in Williquette's vehicle in an attempt to force it to stop. Nerenhausen alleges that at some point during these dangerous maneuvers, he advised Bostedt to back off and slow down. Bostedt did in fact slow down but continued pursuit of Williquette's vehicle some distance back. Five to ten minutes later, the LaFortune vehicle struck Williquette's vehicle forcing it from the road where it overturned inflicting injuries upon Coopman that rendered him a quadriplegic. At the time of the accident, the Bostedt vehicle was approximately one-quarter to one-half mile behind the other cars and arrived at the accident scene shortly after the accident occurred.

When reviewing an order for summary judgment, we apply the same methodology used by the trial court and decide the matter de novo. *In re J.L.H.*, 149 Wis. 2d 349, 354, 441 N.W.2d 273, 275 (Ct. App. 1987). A trial court's decision granting summary judgment will be reversed if it incorrectly decided legal issues or if material facts were in dispute. *Combined Investigative Servs., Inc. v. Scottsdale Ins. Co.*, 165 Wis. 2d 262, 269, 477 N.W.2d 82, 85 (Ct. App. 1991). The methodology prohibits a court from deciding an issue of fact; it must only determine whether a factual issue exists. *Town of Janesville v. Rock County*, 153 Wis. 2d 538, 541, 451

N.W.2d 436, 437 (Ct. App. 1989). In testing the sufficiency of the complaint, the court takes all the facts plead by the plaintiff as true and only dismisses the complaint as legally insufficient if it is clear that under no circumstances could the plaintiff recover. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 317, 401 N.W.2d 816, 821 (1987). We note, however, that we will not consider factual matters raised for the first time on appeal; our review is confined to the facts in the record before the trial court at the time it decided the motion for summary judgment. *Discount Fabric House v. Wisconsin Tel. Co.*, 117 Wis. 2d 587, 591-92, 345 N.W.2d 417, 419 (1984).

Coopman's complaint against Nerenhausen alleged liability based upon Nerenhausen's participation in a civil conspiracy, his negligence and his aiding and abetting the commission of a tort. The trial court granted Nerenhausen's motion for summary judgment after concluding that the facts indicated he had withdrawn from the conspiracy. It arrived at this conclusion based upon Nerenhausen's alleged comments to Bostedt not to get into the middle of the LaFortune-Williquette maneuvers but to back down.

Nerenhausen asserts that there are no facts to support a finding he was a member of a conspiracy to commit a tort. We disagree. A civil conspiracy is the combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish by unlawful means a purpose not in itself unlawful. *Onderdonk v. Lamb*, 79 Wis. 2d 241, 246, 255 N.W.2d 507, 509 (1977). Here, the facts indicate unlawful means, a high speed automobile chase, were employed to engage in the unlawful purpose of stopping the Williquette vehicle to "kick ass."

■

The parties focus on whether Nerenhausen agreed to engage in a conspiracy. "[M]ere knowledge, acquiescence or approval of a plan, without cooperation or agreement to cooperate, is not enough to make a person a party to a conspiracy." *Winslow v. Brown*, 125 Wis. 2d 327, 331, 371 N.W.2d 417, 420 (Ct. App. 1985). There must be intentional participation in the transaction with a view to the furtherance of the common design. *Id.* The record before the trial court includes facts that support a reasonable inference that Nerenhausen intentionally participated in the chase for the purpose of furthering a common design. During his deposition, the following exchange took place:

> Q. So after Joel said or Mark said he flipped us off, do you remember who said the next thing? Do you remember somebody saying, "Let's go kick their ass?"
>
> A. Yeah, I think it was Joel that first said that.
>
> Q. Said, "Let's go kick their ass?"
>
> A. Yeah, then *everybody kind of agreed*.
>
> Q. Said yeah?
>
> A. *Yeah*.
>
> . . . .
>
> Q. After somebody said let's go and you drove out of the parking lot first, *you were going to chase these guys*?
>
> A. *Um-hum*.
>
> Q. Yes?
>
> A. Yeah.
>
> Q. What did you think you were going to do?

A. I thought, personally, that maybe *we would chase them for a while*, they would get away or whatever, nothing would happen or *stop them* and probably an argument, *maybe a few fists would have been thrown, but you never know*. That is basically what I thought. I don't know. (Emphasis added.)

Jeff Bostedt's and Gerald Wusterbarth's depositions also establish everyone's agreement to chase the Williquette vehicle for the purpose of stopping it, confronting the passengers and being there to help LaFortune in the event of a fight. These facts support a reasonable inference that Nerenhausen actively participated in the plan to chase the Williquette vehicle at high speed for the purpose of catching it, stopping it, and fighting the occupants if necessary.

Nerenhausen nevertheless argues that even if he was initially a participant in a conspiracy, the trial court correctly ruled that he had withdrawn from the conspiracy by advising Bostedt to slow down. This presents a factual issue inappropriate for summary judgment determination. Because Wisconsin law on withdrawal from a civil conspiracy is undeveloped, all parties draw on Wisconsin's law of withdrawal from criminal conspiracy. Under sec. 939.05(2)(c), Stats., a person withdraws from a criminal conspiracy when he "voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw." We agree that sec. 939.05(2)(c) is a useful framework for testing whether Nerenhausen withdrew from the civil conspiracy.

558

Nerenhausen correctly notes that his statements to Bostedt to slow down support a finding that he had withdrawn from the conspiracy. However, this finding is not inevitable. The facts and reasonable inferences drawn from them also support a finding that there was no withdrawal. Assuming Nerenhausen told Bostedt to slow down, the jury might reasonably conclude that this statement was made, and that Bostedt slowed down, not because of his desire to withdraw but because he feared they were dangerously close to the two other cars. While being deposed, Nerenhausen indicated that the reason he and Bostedt continued on after slowing down was because he still wanted to be in the chase. This testimony, and the fact he and Bostedt eventually arrived at the scene rather than stopping the pursuit and going home, supports a reasonable inference that Nerenhausen did not withdraw from the conspiracy. In short, the facts permit competing inferences; whether Nerenhausen's conduct constituted participation in or withdrawal from a conspiracy is a matter that must be resolved by the jury. *See Martin v. Ebert*, 245 Wis. 341, 346, 13 N.W.2d 907, 909 (1944).

■■■■

Because we conclude that the question of Nerenhausen's participation in, and withdrawal from, a conspiracy presents a factual dispute, the summary judgment granted to Nerenhausen and State Farm must be reversed. However, because the parties have addressed the remaining theories of liability and because the trial court has not yet addressed these matters but must do so upon remand, we will in the interest of judicial economy address Coopman's remaining theories of liability. *See Nowak v. Transport Indem. Co.*, 120 Wis. 2d 635, 640 n.4, 358 N.W.2d 294, 297 n.4 (Ct. App. 1984).

## ACTIVE NEGLIGENCE

Coopman asserts that Nerenhausen was actively negligent because he encouraged and participated in the chase and that such negligence was a cause of the accident. Nerenhausen counters that, as a matter of law, he cannot be liable for the accident because as a passenger in Bostedt's car, he did not exercise any control over that vehicle. We disagree. The focus on Nerenhausen's management or control of the Bostedt vehicle unnecessarily confines the issue of this case. Simply put, the question is whether Nerenhausen as a person, not as a passenger, has a duty to refrain from participating in high speed automobile chases of others for the purpose of stopping a vehicle and engaging in a fight with its occupants. Nerenhausen has such a duty. It is not the operation of the Bostedt vehicle, but the chase, that is the focus of the claimed negligence. Nerenhausen's lack of management or control over Bostedt's vehicle cannot immunize him from his negligent conduct if a jury finds he encouraged and agreed to participate in a high speed chase in the first instance. Facts support the inference Nerenhausen acted negligently. Whether he in fact acted negligently, and if so whether such negligence was a cause of Coopman's injuries, is a disputed issue of fact.

## AIDING & ABETTING

Coopman's complaint also alleges that Nerenhausen is liable for aiding and abetting a negligent act. Nerenhausen argues that Coopman's complaint only alleges that Nerenhausen aided and abetted Bostedt in the operation of the vehicle, and that Coopman never alleged Nerenhausen aided or abetted LaFor-

tune or others in the larger enterprise of participating in a high speed chase. Relying on *C.L. v. Olson*, 140 Wis. 2d 224, 239, 409 N.W.2d 156, 162-63 (Ct. App. 1987), *aff'd* 143 Wis. 2d 701, 422 N.W.2d 614 (1988), Nerenhausen argues no material facts are in dispute with regard to his control of the Bostedt vehicle and that summary judgment therefore properly dismissed the claim of aiding and abetting. In *C.L.*, we refused to consider negligent acts raised by affidavits opposing summary judgment, even though they supported a cause of action, because those acts and the cause of action they supported were not alleged in the complaint. *Id.* That is not the case before us.

Pleadings in a complaint are to be liberally construed. *Green Spring Farms*, 136 Wis. 2d at 317, 401 N.W.2d at 821. Nerenhausen reads Coopman's complaint too narrowly. Paragraph twenty-two of the amended complaint states:

> At such time and place, each of said Defendants, Bostedt, Ertman, Anderson, Nicholi, and Wusterbarth aided, abetted, encouraged, conspired with, urged and acquiesced in the manner by which La Fortune operated said vehicle in pursuit of the vehicle occupied by Coopman. *Such Defendants acted in concert with each other and with* Bostedt, LaFortune and *Nerenhausen* in the negligent operation of such vehicle and *in the reckless pursuit of the vehicle occupied by Coopman,* by providing advice and encouragement to the Defendant, LaFortune in the operation of his vehicle, by keeping a look out negligently in such operation, and *by otherwise acting recklessly and negligently. Such conduct by said Defendants was known to be negligent and reckless*

and was a substantial factor in causing the collision alleged hereinafter. (Emphasis added).

While Coopman's complaint is not a model of clarity, this paragraph sufficiently states Nerenhausen aided and abetted in the negligent and reckless pursuit of the Williquette vehicle.[1]

We now turn to whether any facts in the record, or reasonable inferences drawn from them, demonstrate the existence of a factual dispute with regard to Nerenhausen's aiding and abetting the commission of a negligent act. A person is liable in a civil action for aiding and abetting if the person undertakes conduct that aids another in the commission of an unlawful act and the person consciously desires or intends that his conduct will yield such assistance. *Winslow,* 125 Wis. 2d at 336, 371 N.W.2d at 423. In *Winslow*, we stated that an individual's mere presence in an automobile operated by an owner engaged in unlawful conduct does not constitute aiding and abetting unless an intent to assist in the conduct is communicated. *Id.* Thus, the passengers in *Winslow* who passively accompanied a driver as he unlawfully and negligently drove down a bicycle path were not liable to the plaintiff bicyclist who was struck and injured by the car.

---

[1] Even if the complaint only stated Nerenhausen aided and abetted the negligent control of Bostedt's vehicle, we would not sustain the summary judgment dismissing Coopman's claim of aiding and abetting because a factual dispute exists with regard to the civil conspiracy and negligence claims. When this case returns to the trial court, Coopman may move to amend his complaint and the court in its discretion may determine justice requires the amendment so that the complaint more clearly conforms to the cause of action supported by the proofs. *See* sec. 802.09(1), Stats.

██

We conclude the facts here demonstrate a dispute as to whether Nerenhausen was engaged in more than passive accompaniment. First, Nerenhausen's agreement with everybody to "kick ass," his accompaniment of Bostedt during the chase and his stated purpose of chasing the Williquette vehicle to try to stop it and fight its occupants support the inference he consciously desired and intended that his conduct would assist in the unlawful plan of chasing and fighting the occupants of the Williquette car. These same facts support the inference Nerenhausen's conduct did aid others in the commission of an unlawful act. Even after they were overtaken by LaFortune and they slowed down, the proofs permit the inference that Nerenhausen agreed that they continued on because he still wanted to be involved in the chase. Whether Nerenhausen's conduct constitutes aiding and abetting a negligent act is thus a factual dispute that must be resolved by the jury.

## PUBLIC POLICY

Finally, Nerenhausen argues that as a matter of public policy his conduct is so remote and removed from the accident that he should be absolved from liability. This assertion is based upon his representation that he was at least one-quarter of a mile from the accident scene when the accident occurred and that he exercised no control over the Bostedt vehicle that could have caused the accident. He asserts that permitting recovery under these facts "would enter a field that has no sensible or just stopping point." *Id.* at 332, 371 N.W.2d at 421. Although a court may occasionally decide whether public policy precludes a finding of liability at

the pleading stage of the case, the supreme court has stated the better practice is to have a full factual resolution at trial before evaluating the policy considerations involved. *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 51, 288 N.W.2d 95, 112 (1980). Accordingly, Nerenhausen's public policy argument is not ripe for consideration and we will not address it.

*By the Court.*—Judgment reversed.