Jessica L. EDWARDSON, Thomas Edwardson and Lynn Larson (f/k/a Lynn Dunn and Lynn Personett), Plaintiffs-Appellants,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Mathew J. Harvey, Joseph J. Cutchins, James P. Molencupp, Karen Molencupp, David Garetson, Jolynn Garetson, and Rural Mutual Insurance Company, Defendants,

James P. MOLENCUPP, Jr., Jeffrey Garetson, and General Casualty Company of Wisconsin, Defendants-Respondents.

Court of Appeals

No. 98–1603. Submitted on briefs November 11, 1998.—Decided December 23, 1998.

(Also reported in 589 N.W.2d 436.)

755

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *P. Jeffrey Archibald* and *Rhonda L. Lanford* of *Habush, Habush, Davis & Rottier, S.C.* of Madison.

On behalf of the defendant-respondent *Jeffrey Garetson*, the cause was submitted on the brief of *Robert G. Krohn* of *Roethe, Krohn, Pope & McCarthy, LLP* of Edgerton.

On behalf of the defendants-respondents *James P. Molencupp, Jr.* and *General Casualty Co. of Wisconsin*, the cause was submitted on the brief of *Robert F. Johnson* and *Philip C. Reid* of *Cook and Franke, S.C.* of Milwaukee.

Before Dykman, P.J., Eich and Roggensack, JJ.

EICH, J. Jessica Edwardson appeals from a summary judgment dismissing her personal injury claims against James Molencupp, Jeffrey Garetson and General Casualty Company of Wisconsin (Garetson's insurer). She seeks damages for injuries caused when a motorcycle on which she was riding as a passenger crashed after being pursued by three young men in a car. She argues that Molencupp and Garetson, who were passengers in the car: (1) participated in a "civil conspiracy" with the driver, Joseph Cutchins, to chase the motorcyclists in order to commit a battery on them; (2) aided and abetted Cutchins's negligent driving; and (3) were themselves negligent in failing to refrain from participating in an unlawful chase. We reject her arguments and affirm the judgment.

A week before the accident, Cutchins was confronted at Riverside Park—a park in Janesville where

young people go to socialize and "hang-out"—by three young men, Jon Paul and two others, who threatened to shoot him and said they were going "to kick [his] ass." On the evening of the accident, Cutchins picked up his friends, Molencupp and Garetson, from their homes in Beloit to accompany him to the park so he could talk to Paul and "get things straightened out." He said he never intended to fight, but simply wanted his friends there in case the others "started swinging." Molencupp and Garetson were aware of the conflict between Cutchins and the other young men, but didn't know the specifics. Garetson said he went to the park with Cutchins "to hang out with a bunch of other young people," and "to make sure [Cutchins] didn't get hurt." Molencupp "went to the park to have fun" and "to grab a bite to eat." According to their affidavits, neither Molencupp nor Garetson believed there would be any fights; and, while at the park, neither noticed any altercations or fights, or expected any to occur. Both planned to stay with Cutchins when they left the park because they were dependent on him for a ride home.

Once at the park, Cutchins asked another young man to find out if Paul wanted to talk. Paul agreed and suggested that they go somewhere else. Paul got on his motorcycle to leave, and Cutchins, Molencupp and Garetson all got in Cutchins's car to follow. On the way out of the park, Cutchins told another friend, Matthew Harvey, who was there in his car, that they were going to talk to Paul. According to Harvey, Cutchins told him to follow them. Paul and two other motorcyclists, including Chad Herbst, were stopped at the park exit. Either Molencupp or Garetson, or both, stepped out of Cutchins's car and asked the motorcyclists if they wanted to talk. Edwardson, a passenger on Herbst's motorcycle, testified that she heard someone from one

758

of the vehicles yelling at them in a "threatening manner," and one of the motorcyclists then yelled, "Let's get the F out of here."

The motorcycles left the park, driving fast, followed by Harvey and Cutchins in their cars. Edwardson said the cars were weaving in and out of traffic as they chased the motorcyclists. Cutchins testified that he wasn't chasing the motorcyclists, but was simply following them "to see what was going . . . on." Once on the highway, Cutchins, who was following Harvey's car, reached speeds of 70 to 80 mph. By the time Cutchins approached the accident scene, however, he had slowed significantly and was approximately one-quarter mile behind Harvey's car. At some point before Cutchins arrived at the scene, two of the motorcycles collided, resulting in Edwardson's injuries.

We review summary judgments *de novo*, employing the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). The methodology is well-established and need not be repeated here. *See State Bank v. Elsen*, 128 Wis. 2d 508, 511–12, 383 N.W.2d 916, 917–18 (Ct. App. 1986). We will affirm the trial court's decision granting summary judgment if the record demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Section 802.08(2), STATS.

## Civil Conspiracy

Edwardson argues first that the facts support a reasonable inference that Molencupp and Garetson conspired with Cutchins to chase the motorcyclists in order to fight with them.

759

A civil conspiracy is the combination of two or more persons, by concerted action, to accomplish an unlawful purpose, or to accomplish a lawful purpose through unlawful means. *Onderdonk v. Lamb,* 79 Wis. 2d 241, 246, 255 N.W.2d 507, 509 (1977). To state a cause of action for civil conspiracy, the plaintiff must allege the formation and operation of the conspiracy, the wrongful act or acts done pursuant thereto, and the damage resulting from such act or acts. *Id.* at 247, 255 N.W.2d at 510. Facts should be alleged which show that the acts done in furtherance of the conspiracy were wrongful. *Modern Materials, Inc. v. Advanced Tooling Specialists, Inc.,* 206 Wis. 2d 435, 448, 557 N.W.2d 835, 840 (Ct. App. 1996).

In support of her argument, Edwardson places principal reliance on *Coopman v. State Farm Fire & Cas. Co.,* 179 Wis. 2d 548, 508 N.W.2d 610 (Ct. App. 1993). In *Coopman,* several young men were standing in a tavern parking lot when a car in which Coopman was a passenger drove by and someone in the car allegedly made an obscene gesture to them. The drivers of two cars parked in the lot, and their passengers, agreed to chase the vehicle, with the acknowledged objective of "stop[ping] the . . . vehicle, find[ing] out why the obscene gesture had been directed toward [them] and 'kick[ing] their ass.' " *Id.* at 554, 508 N.W.2d at 612. In anticipation of the pending fight, the driver of one car stopped and picked up three friends prior to commencing the chase, while the second driver began the chase immediately. The two cars chased the Coopman vehicle until they eventually ran it off the road, where it overturned, seriously injuring Coopman. Coopman sued a passenger in one of the vehicles, alleging conspiracy, negligence and aiding and abetting a tort. The trial

court granted the defendant's motion for summary judgment, dismissing the action. We reversed, concluding that the facts "indicate [that] unlawful means, a high speed automobile chase, were employed to engage in the unlawful purpose of stopping the [Coopman] vehicle to 'kick ass.' " *Id.* at 556, 508 N.W.2d at 613.

Edwardson argues that the facts in this case are even stronger than in *Coopman*. We disagree. In that case, there was a specific, verbal agreement between the defendant passenger and the other pursuers to chase the Coopman vehicle and commit a battery upon its occupants. The defendant passenger testified in his deposition that "everyone kind of agreed" to "kick their ass" and he thought they would "chase them for a while" and that "maybe a few fists would have been thrown." Indeed, as indicated, one driver stopped to pick up three other men to aid in the pursuit. A reasonable inference could arise from these facts that the defendant, though only a passenger, intentionally participated in the chase for the specific purpose of fighting. As indicated, that was not the case here.

We think *Winslow v. Brown*, 125 Wis. 2d 327, 371 N.W.2d 417 (1985), is much closer to the instant facts. Winslow, riding a bicycle on a trail reserved for bicycle use, was struck by an automobile in which the defendants were passengers. He sought damages from the passengers, alleging that they had conspired with the driver to operate on the bicycle trail, aided and abetted the driver's tortious conduct, and negligently failed to maintain a lookout for bicyclists. The defendants argued that they did not "encourage, advise or assist the driver of the automobile to operate on the bicycle trail and, therefore, they did not act in concert with [him]." *Id.* at 330, 371 N.W.2d at 419. Winslow countered by maintaining that the defendants "tacitly

assented to the illegal plan by knowingly riding in the automobile on the bicycle trail," and "encouraged the illegal plan by agreeing to be passengers during the illegal trip." *Id.* The trial court granted the defendants' motion for summary judgment dismissing the action, and we affirmed, recognizing that "mere knowledge, acquiescence or approval of a plan, without cooperation or agreement to cooperate, is not enough to make a person a party to a conspiracy." *Id.* at 331, 371 N.W.2d at 420. We said there must be something more—the defendant's intentional participation in the transaction with "a view to the furtherance of the common design." *Id.* An agreement or cooperation toward the attainment of the illegal objective is a necessary element of a conspiracy, *Augustine v. Anti-Defamation League B'nai B'rith,* 75 Wis. 2d 207, 216, 249 N.W.2d 547, 552 (1977), and Winslow alleged only that the defendants knew about the illegal plan before becoming passengers. This alone, we held, did not raise a reasonable inference that they "intentionally encouraged" the illegal activity. *Winslow,* 125 Wis. 2d at 332, 371 N.W.2d at 421. We also said that the defendants' willingness to accompany the driver on the illegal trip, absent evidence of any acts made in furtherance of the illegal plan—or any attempts to discourage it—was insufficient to support liability. *Id.* at 332–33, 371 N.W.2d at 421.

As in *Winslow,* although Molencupp and Garetson accompanied Cutchins on an unlawful trip—the high-speed automobile chase—there are no facts which would support a reasonable inference that either of them had agreed with Cutchins, or anyone else, to engage in the chase in order to batter the motorcyclists. There is no evidence that they either knew about, or intentionally encouraged, an illegal plan. Although

Molencupp and Garetson knew there had been some sort of conflict between Cutchins and some of the motorcyclists the week before, they knew nothing of the specifics of the earlier encounter. They said they went to Riverside Park that evening to socialize, "hangout," and grab a bite to eat. Neither of them went there thinking there would be any fights and, once there, neither expected any to occur. And while Cutchins stated in his deposition that he brought his friends along in case the others "started. swinging," he also stated that he did not go there intending to fight, but simply hoped to "talk" to Paul—"to straighten things out"—so he wouldn't be wary of going to the park in the future.

Nor is there any evidence that Molencupp, Garetson or Cutchins agreed to chase the motorcyclists, or fight with them, once they left the park. According to Molencupp and Garetson, they planned to remain with Cutchins when they left the park solely because they were dependent upon him for a ride back to Beloit that evening. There are no facts to support an inference that either Molencupp or Garetson anticipated they were going to become involved in a chase or a fight that evening. Indeed, as we have noted, both Molencupp and Garetson stated in their affidavits that they never cooperated or agreed to cooperate to become involved in any type of chase that evening, and never intentionally or purposefully encouraged Cutchins to operate his vehicle in any particular manner, speed or direction—or even to follow the motorcyclists.

██ Mere presence or ambivalent conduct at the scene of the illegal conduct is insufficient to support liability. *Winslow*, 125 Wis. 2d at 332, 371 N.W.2d at 421; *citing State v. Charbarneau,* 82 Wis. 2d 644, 656, 264 N.W.2d

227, 233 (1978). And that was the extent of Molencupp's and Garetson's involvement with the "chase"; they simply acquiesced in it without actively encouraging, advising or assisting Cutchins in any way. We agree with the trial court that "there is absolutely no evidence upon which a reasonable jury could find that either [Molencupp or Garetson] conspired with the driver, . . . Cutchins, to confront the motorcyclists and to engage in the illegal act of fighting (battery)." Summary judgment was appropriate on Edwardson's conspiracy cause of action.

### Aiding & Abetting

Edwardson next argues that Molencupp and Garetson "aided and abetted" Cutchins's negligent act—the high-speed chase. In Wisconsin, a person may be held civilly liable for aiding and abetting if he or she: (1) undertakes conduct that as a matter of objective fact aids another in the commission of an unlawful act; and (2) consciously desires or intends that his or her conduct will yield such assistance. *Winslow*, 125 Wis. 2d at 336, 371 N.W.2d at 423. As indicated above, a passenger's mere presence in an automobile does not constitute aiding and abetting the driver's unlawful conduct "unless an intent to assist is communicated." *Id.* at 336–37, 371 N.W.2d at 423. The situation here is, again, similar to that in *Winslow* where the passengers, who had knowingly agreed to accompany the driver on a negligent and unlawful trip—driving on the bike trail—were held to be not liable to Winslow when the car struck and injured him. Their passive accompaniment did not raise an inference of a "willingness to assist." *Id.* at 337, 371 N.W.2d at 423.

Nor does the record in this case indicate a factual dispute as to whether Molencupp or Garetson willingly assisted Cutchins in "chasing" the motorcyclists. There is no evidence that either of them desired, intended, instigated, assisted or encouraged Cutchins to drive the vehicle in any particular manner or direction. Even if, at some point after leaving the park, they anticipated that a chase was likely to ensue, their mere presence in the automobile, and the fact that they made "no effort to prevent the unlawful conduct," is not sufficient to impose liability. *Id.* at 336, 371 N.W.2d at 423.

■

Pointing to evidence that either Molencupp or Garetson, or both, jumped out of Cutchins's vehicle and allegedly yelled at the motorcyclists in a "threatening manner," Edwardson claims that the two men were in fact "key players" in the chase and that this conduct somehow instigated it. However, no one recalls who exactly jumped out of the car or what words were spoken. The facts fall short of demonstrating either Molencupp's or Garetson's intent or willingness to assist Cutchins in the chase.

The trial court properly dismissed the aiding and abetting claim.

### Negligence

■

Finally, Edwardson argues that Molencupp and Garetson "had a duty to refrain from unlawfully chasing the motorcycles, and . . . were negligent in failing to refrain from participating in the unlawful chase." The necessary elements to establish a cause of action for negligence are: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal con-

nection between the conduct and the injuries; and (4) actual loss or damage as a result of the injury. *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 531, 247 N.W.2d 132, 135 (1976). Here, too, we find no merit in Edwardson's argument.

Again relying on *Coopman*, Edwardson attempts to establish a special duty of care on Molencupp and Garetson because "they encouraged and participated in" the high-speed chase. As we have said above, however, our ruling in *Coopman* presupposed the passenger's agreed-upon purpose of "stopping the vehicle [to] engag[e] in a fight with its occupants"—a purpose Edwardson has not shown to exist here. And Molencupp's and Garetson's passive presence in Cutchins's car does not give rise to a duty of care. "[A] passenger is not liable for negligent lookout unless he [or she] assumed that part of the driver's responsibilities." *Winslow*, 125 Wis. 2d at 337, 371 N.W.2d at 423. Absent a special relationship, it is generally held that no duty exists to protect others from hazardous situations. *DeBauche v. Knott*, 69 Wis. 2d 119, 122–23, 230 N.W.2d 158, 160–61 (1975).

Edwardson also claims that Molencupp and Garetson had a duty to refrain from accompanying Cutchins because their behavior created an unreasonably dangerous situation for Edwardson, the other motorcyclists and the "world at large." We disagree. While it is true that engaging in a high-speed chase could create a foreseeable hazardous situation, such an argument "conditions the [passenger]s' liability on the degree of risk created by the driver, without regard for the fault of the [passenger]s." *Winslow*, 125 Wis. 2d at 337, 371 N.W.2d at 423. Because "[l]iability based on this ground would impose a duty to protect third per-

sons from injury," we refused "to impose a duty of lookout on the passenger merely because the driver created a high degree of risk." *Id.* Thus, unless Molencupp's and Garetson's "active negligence" contributed to cause the accident, they are not liable. Because the record facts raise no inferences that either Molencupp or Garetson had a duty of care in this situation, the trial court properly dismissed Edwardson's negligence claim as a matter of law.

*By the Court.*—Judgment affirmed.