MR, BY HER NATURAL GUARDIAN PR, AND PR, PLAINTIFFS-RESPONDENTS,
v.
JASON TURCOTT, DEFENDANT-APPELLANT.
No. 04-0056.
Court of Appeals of Wisconsin.
Opinion Filed: February 3, 2005.
Before Deininger, P.J., Dykman and Vergeront, JJ.
¶1 DEININGER, P.J.
Jason Turcott appeals a $1.25 million judgment entered against him for damages suffered by M.R., a minor, as a result of Turcott's sexual assault. He claims that the circuit court erred in granting M.R. summary judgment on the issue of his liability for the assault, leaving only damages to be tried to a jury. Turcott contends that inconsistencies between statements M.R. gave to police and her averments in an affidavit in support of summary judgment raised a disputed issue of material fact that preclude summary judgment on the issue of whether he assaulted her. We disagree and conclude instead that Turcott's failure to counter M.R.'s averments with any evidentiary submissions that served to place in dispute whether he had sexually assaulted her entitled M.R. to summary judgment on the issue of liability. Accordingly, we affirm the appealed judgment.

BACKGROUND 
¶2 M.R., who was thirteen at the time of the incident, sued Turcott to recover compensatory and punitive damages for his sexually assaulting her.[1] Prior to trial, she moved for summary judgment on the issue of Turcott's liability for committing the assault. In an affidavit supporting the motion, M.R. averred that Turcott had "exposed his genitals to me," "touched my genitalia," and "had sexual intercourse with me," all without her permission. She also submitted excerpts from Turcott's deposition in which he had not denied the conduct but invoked his privilege under the Fifth Amendment against self-incrimination.
¶3 In response to the motion, Turcott submitted copies of police reports indicating that M.R. had first told police that Turcott had exposed himself and touched her genitals but had not had intercourse with her. About one year later, she told police that he "tried to have sex with me.... He did get inside of me but very briefly." Turcott argued that these conflicting accounts of what happened placed M.R.'s credibility in doubt and thus raised a dispute of material fact so as to preclude summary judgment in her favor as to whether he had sexually assaulted her.
¶4 The circuit court granted M.R.'s motion and denied Turcott's motion for reconsideration. The court concluded that, under either of M.R.'s versions of events cited by Turcott, an actionable sexual assault had occurred and Turcott had produced no evidence to the contrary. The jury awarded M.R. $500,000 for past and future pain, suffering and emotional distress, plus $750,000 in punitive damages. Turcott moved to set aside the verdict and for a new trial on the basis that the court had improperly granted summary judgment on the liability issue. The court denied the motion and entered judgment on the verdict. Turcott appeals.

ANALYSIS
¶5 We review an order for summary judgment de novo, owing no deference to the trial court. Waters v. United States Fid. & Guar. Co., 124 Wis. 2d 275, 278, 369 N.W.2d 755 (Ct. App. 1985). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See WIS. STAT. § 802.08(2). When reviewing the granting of summary judgment, we are to use the same standards and methodology as the trial court. M&I First Nat'l Bank v. Episcopal Homes Mgmt., Inc., 195 Wis. 2d 485, 496-97, 536 N.W.2d 175 (Ct. App. 1995). We will reverse a decision granting summary judgment if the trial court incorrectly decided legal issues or if material facts are in dispute. Coopman v. State Farm Fire & Cas. Co., 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993). We, like the trial court, are prohibited, however, from deciding issues of fact and may decide only whether a factual issue exists. Id.
¶6 Turcott cites several appellate decisions that emphasize that a witness's credibility is solely for a fact finder to determine at trial, not for a court to decide when considering a motion for summary judgment. See, e.g., Yahnke v. Carson, 2000 WI 74, ¶11, 236 Wis. 2d 613 N.W.2d 102 ("[A] circuit court does not decide issues of credibility on summary judgment."); Fuller v. Riedel, 159 Wis. 2d 323, 332, 464 N.W.2d 97 (Ct. App. 1990) ("[W]here a witness makes contradictory statements, it is within the fact finder's province to accept or rely on either version or to disregard in part or total the other."). Because M.R.'s versions of what happened changed between her initial statement to police and her subsequent accounts, Turcott claims that the jury might have disbelieved her entirely and concluded that he had not engaged in any form of sexually assaultive conduct whatsoever. He faults the trial court's summary judgment ruling for preventing him from attacking M.R.'s credibility at trial or arguing to the jury that no sexual assault had occurred.
¶7 We reject Turcott's argument. We first note that Turcott does not dispute that both of M.R.'s accounts that he submitted and cited in opposing summary judgment would establish his commission of the tort of battery. See RESTATEMENT (SECOND) OF TORTS § 18 (1965) ("An actor is subject to liability to another for battery if ... he acts intending to cause a harmful or offensive contact with the person of the other or a third person ... and ... an offensive contact with the person of the other directly or indirectly results."); see also WIS JICIVIL 2010. Second, Turcott submitted no sworn denial on his part of any of the acts to which M.R. averred, and neither did he submit evidentiary materials to refute M.R.'s averments or to support a defense to liability.
¶8 Our disposition is thus controlled by the well-established principle of summary judgment methodology that parties against whom a properly supported motion for summary judgment is made may not rest on mere denials in their pleadings but must counter the movants' evidentiary submissions with similar proofs of their own. The supreme court explained some twenty-five years ago:
While it is the moving party's responsibility to initially establish a prima facie case for summary judgment, once it is established the party in opposition to the motion may not rest upon the mere allegations or denials of the pleadings, but must, by affidavits or other statutory means, set forth specific facts showing that there exists a genuine issue requiring a trial.... Where the party opposing summary judgment (the defendant in this case) fails to respond or raise an issue of material fact, the trial court is authorized to grant summary judgment .... In this case the defendant failed to respond to the summary judgment motion, either by affidavits or otherwise, and furthermore failed to set forth any facts to demonstrate to the satisfaction of the trial court that a genuine issue of fact existed for trial.
Board of Regents of Univ. of Wisconsin Sys. v. Mussallem, 94 Wis. 2d 657, 672-74, 289 N.W.2d 801 (1980) (citation and footnote omitted).
¶9 More recently, this court has noted that an opponent of summary judgment "may not rely on a conjecture that evidence in support of the motion `may' not be accurate or reliable," but must affirmatively "counter with evidentiary materials demonstrating there is a dispute." Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co., 2001 WI App 148, ¶48, 246 Wis. 2d 933, 632 N.W.2d 59. We also emphasized in Physicians Plus that "a party opposing summary judgment [is obligated] to submit materials on summary judgment to counter the submissions of the moving party. It is not enough to simply claim that the moving party's submission should be disbelieved or discounted." Id., ¶54 (emphasis added); see also Schaidler v. Mercy Med. Ctr. of Oshkosh, Inc., 209 Wis. 2d 457, 475, 563 N.W.2d 554 (Ct. App. 1997) (party opposing summary judgment may not prevail "merely by discounting the expert testimony put forth" by the movant).
¶10 It is true, as Turcott argues and his cited authorities establish, that a court may not make credibility determinations when ruling on summary judgment motions. Rather, it must take the affidavits and other evidentiary submissions "at face value" in order to determine whether any material facts are placed in dispute. Here, M.R.'s prior statements relied on by Turcott at summary judgment place in dispute only the precise nature and extent of Turcott's intentional "offensive contact," but nothing in the summary judgment record places in dispute that some offensive contact occurred. Contrary to Turcott's suggestion, our conclusion to affirm the summary judgment on liability does not require that we draw an inference of guilt against Turcott for exercising his Fifth Amendment privilege, although such an inference would be permissible and would lend additional support to our conclusion.[2] We draw no inference against Turcott for remaining silent but consider only that he submitted no evidence of any kind on summary judgment that counters or contradicts M.R.'s material averments that Turcott engaged in one or more forms of intentional, offensive bodily contact with her.
¶11 Turcott also seeks to rely on Ianni v. Grain Dealers Mut. Ins. Co., 42 Wis. 2d 354, 360, 166 N.W.2d 148 (1969), but we conclude that such reliance is also misplaced. The supreme court in Ianni affirmed a liability verdict in a personal injury case, rejecting the appellant's claim that it should be set aside because the sole surviving eyewitness to a car accident gave testimony at trial that contradicted an earlier signed statement she had given regarding how the accident had occurred. Id. at 359-60. The court concluded that if the sole witness's trial testimony had been "contradictory and conflicting," the appellant would be entitled to relief from the verdict, but "[w]here the conflict or contradiction arises by reason of an earlier statement given by the witness, it is for the jury to determine the question of the weight and credence to be given the witness-stand testimony and prior extrajudicial statement." Id. at 360-61. The court went on to explain that the credibility of the witness's testimony was a matter to be determined by the jury, not by an appellate court reviewing "only the cold, hard type of a printed record." Id. at 361. Thus, it was for jurors to choose whether to believe the witness's trial testimony or her earlier statements, or they could even decide "that the inconsistencies revealed in trial and pre-trial statements of a witness completely erode his credibility, and give no weight to either statement." Id.
¶12 The cited discussion in Ianni represents nothing more than an exposition of the well-known principle that appellate courts will not second guess a fact finder's credibility determinations unless certain evidence is incredible "as a matter of law." The decision says nothing about how a court is to treat a witness's contradictory or conflicting statements presented on summary judgment. As we have explained, a court may not choose from among conflicting accounts on summary judgment, but must take each one at face value and determine whether they present a dispute of material fact. We and the trial court have done just that with regard to M.R.'s statements presented on summary judgment, and we have concluded that (1) under either of M.R.'s versions of events, Turcott engaged in tortious conduct, and (2) nothing in the record on summary judgment tended to show otherwise. Turcott could have chosen to deny at his deposition or by affidavit that he did not intentionally commit acts that resulted in offensive contact with M.R., but he did not do so. Thus, as to the question of whether he could be found liable in tort for the actions M.R. described, "there was nothing to try." See Yahnke, 236 Wis. 2d 257, ¶10 ("The well-established purpose of summary judgment procedure is to determine the existence of genuine factual disputes in order to `avoid trials where there is nothing to try.'").[3]
¶13 Turcott further contends that the trial court's summary judgment ruling on liability precluded him from introducing at trial yet another statement M.R. gave to police, in which she initially said that Turcott had placed his hand on only her stomach,[4] or from arguing to the jury that any sexual contact that occurred was consensual because M.R. was "both flirtatious and sexually precocious." He points to no place in the record, however, where he attempted but was prevented by the court from (1) introducing M.R.'s initial, allegedly exculpatory statement at trial; (2) otherwise attempting to undermine her credibility;[5] or (3) pursuing or arguing his consent theory.
¶14 In ruling on Turcott's post-verdict motion, in which Turcott also maintained that the court's summary judgment ruling had precluded him from raising certain defenses and making certain arguments, the trial court said this:
I think the only defense I took away from you by ruling on summary judgment was the "It didn't happen at all" defense. I think all the other possible defenses, either that M.R. was [a] consensual or consenting participant in the activity or that the activity was only the kind of touching first described or that the activity was the completed intercourse later described, all of those claims could have been made and her credibility could have been challenged I think in the context of the damages phase. Because the jury had to reach some conclusions about what happened in order to award damages. The only thing you were prohibited from defending on was on a theory that nothing happened.
We agree with the trial court's assessment.
¶15 We have concluded that the trial court did not err in granting summary judgment on the issue of liability based on the items submitted in support of and opposition to the motion. We acknowledge that the court's pretrial ruling precluded Turcott from arguing that he had engaged in no tortious conduct whatsoever, and rightfully so, given that he failed to counter M.R.'s averments in support of her motion for summary judgment. The record before us does not permit Turcott to belatedly complain about other forgone trial strategies or tactics by asserting that he could not have pursued them. If he truly wanted to challenge M.R.'s trial testimony regarding what Turcott did and how she responded to his actions, he could have and should have attempted to do so. Because he made no such attempt, there is no basis for us to find trial court error on these grounds.[6]

CONCLUSION
¶16 For the reasons discussed above, we affirm the appealed judgment.
By the Court.  Judgment affirmed.
NOTES
[1] M.R.'s parents also sought damages for their loss of their daughter's society and companionship and for costs they incurred in her treatment. Only the latter claim was submitted to the jury, and the appealed judgment includes $2,000 for her mother's claim for reimbursement of treatment costs.
[2] Unlike in a criminal prosecution, adverse inferences may be drawn in a civil action against a party who exercises his or her Fifth Amendment privilege, and a court may, but need not, draw such inferences when considering summary judgment:

[I]f a person is justified in seeking the protection of the fifth amendment then his act [in exercising the privilege] per se is neither illegal nor fraudulent aside from what inference might be drawn in a civil case from such action. It has long been recognized in Wisconsin that a person may invoke the fifth amendment in a civil case in order to protect himself from the use of such evidence against him in a subsequent criminal action. However, in a civil case as distinguished from a criminal case, an inference of guilt or against the interest of the witness may be drawn from his invoking the fifth amendment. Since only one inference can be drawn logically in such a case, the court may as a matter of law draw such inference.
Grognet v. Fox Valley Trucking Serv., 45 Wis. 2d 235, 239, 172 N.W.2d 812 (1969) (citation omitted).
[3] We note that M.R. cites trial testimony that Turcott admitted to his probation officer that he "had sex" with M.R., and she argues that we thus have "the benefit of hindsight" in deciding whether summary judgment was properly granted on the issue of liability. We reject this argument and emphasize that our independent review of the trial court's summary judgment decision is based, as it must be, on the record before the trial court on summary judgment. Any evidence presented at trial by either party may play no role whatsoever in our determination of whether summary judgment on liability was proper.
[4] It appears that M.R.'s very first statement to police was in the record at the time the trial court made its summary judgment ruling, having been submitted by M.R. in response to Turcott's motion to compel further discovery. In this initial account of the incident, M.R. told an investigator that Turcott entered her bedroom while she lay half-asleep in her bed, and that she asked him three times to leave. According to M.R., he then closed the door and "put his hand under the blanket but on top of her tee-shirt and started rubbing her stomach." She said that Turcott's touching went no further than her stomach "because she grabbed his hand as soon as he put it on her stomach." M.R. also reported in this statement that Turcott then pulled his pants and underwear "part way down," exposing a portion of his penis.

Turcott did not refer to this first statement in opposing summary judgment in the trial court, however, and he does not directly rely on it in his argument on appeal. As in the trial court, Turcott argues only that M.R.'s account of sexual touching, given several days later, and her claim a year later that brief intercourse had occurred were inconsistent and contradictory, thereby precluding summary judgment on liability. Although we have no occasion to, and thus do not, decide whether this earliest of M.R.'s accounts would compel a different result if considered on summary judgment, we point out that, even if Turcott's touching proceeded no further than M.R.'s stomach, a court might well conclude that his actions as first described by M.R. also constituted "offensive bodily contact." See RESTATEMENT (SECOND) OF TORTS § 19 (1965) ("A bodily contact is offensive if it offends a reasonable sense of personal dignity.").
[5] Turcott does note in his brief that, in a pretrial ruling, the trial court limited his crossexamination of M.R. on the topic of her knowledge of her father's alleged drug dealing. He does not, however, argue that the court's ruling in this regard was error.
[6] Turcott argued in the trial court, in support of his post-verdict motion, that, unlike criminal liability for sexual assault of a minor, tort liability might have been avoided by establishing that M.R. consented to Turcott's actions. It is not necessary for us to decide whether Turcott could have pursued a consent defense, however, because he made no attempt to do so at or before trial. That Turcott could have avoided liability for his actions by establishing M.R.'s consent, however, is far from certain. See RESTATEMENT (SECOND) OF TORTS § 892C(2) (1965) ("If conduct is made criminal in order to protect a certain class of persons irrespective of their consent, the consent of members of the class to the conduct is not effective to bar a tort action."); id., cmt. e, illus. 8 ("A statute makes it rape to have sexual intercourse with a girl under the age of sixteen even with her consent. At the solicitation of A, a girl of fourteen, B has intercourse with her. A's consent does not bar her action for battery.").