HRUZ, J.
¶1 Gene Frederickson Trucking and Excavating, Inc. ("Frederickson") appeals a judgment dismissing, for failure to state a claim, its civil conspiracy and "prima facie tort" claims against various defendants associated with Wagner 22, LLC ("Wagner 22" and, collectively with the other defendants, the "Wagner Group"). Frederickson contends its complaint adequately stated those claims because it alleged that the Wagner Group had conspired to effectuate a bank foreclosure that eliminated Frederickson's junior lien on the real property at issue. We conclude the circuit court properly dismissed Frederickson's claims because Frederickson failed to allege any unlawful conduct or purpose on the Wagner Group's part, and because Wisconsin does not recognize "prima facie tort" as a valid basis for imposing civil liability. Accordingly, we affirm.
BACKGROUND
¶2 Frederickson is a contract trucking and excavation company. In March 2002, it was contracted to perform work for 22 Shawano, LLC ("22 Shawano"), and Northwoods Development Group, LLC ("Northwoods"). 22 Shawano was the owner of real property located in the Town of Belle Plaine, Wisconsin, on which it and Northwoods constructed a Shell gas station and an Arby's restaurant.
¶3 22 Shawano and Northwoods failed to pay for Frederickson's services in full, resulting in a $ 242,222.92 balance due. In 2003, Frederickson commenced a lawsuit against 22 Shawano and Northwoods to collect the unpaid balance. The claim resulted in a judgment in Frederickson's favor, which was entered in 2005. No payments were ever made on the judgment.
¶4 Meanwhile, in April 2002, 22 Shawano executed with Anchor Bank two loan notes totaling $ 3.87 million. The notes were secured by mortgages on the real property and its fixtures, and one of the notes was personally guaranteed by Howard Wagner and Daniel Decaster. Wagner was the managing member of 22 Shawano, and he was also the sole member of Fox Valley ETD, LLC, which owned a twenty-five percent interest in 22 Shawano. Decaster is one of six members of Northwoods; Northwoods owned a fifty percent interest in 22 Shawano.
¶5 22 Shawano defaulted on both notes. At the time of default, it owed approximately $ 2.1 million on the notes, and in 2014 Anchor Bank commenced a foreclosure action against 22 Shawano and its guarantors. In 2015, Frederickson commenced a separate collection action and was granted leave to sue on its judgment, but it was unable to execute against 22 Shawano's property given the pending foreclosure. Wagner 22, which was a new entity formed by Wagner and Decaster, purchased Anchor Bank's rights with respect to the property and was substituted as a plaintiff in the foreclosure action.
¶6 Wagner 22 subsequently purchased the property for $ 2 million at the sheriff's sale. As a result of the sale, Frederickson's junior lien was extinguished and the separate collection action it had commenced was dismissed. Neither 22 Shawano nor Northwoods owned other assets sufficient to satisfy Frederickson's judgment against them.
¶7 Following the sale, Frederickson filed the present action alleging civil conspiracy and advancing a cause of action it labeled "Liability for Intended Consequences (Innominate Tort)."[1] In general, Frederickson alleged that 22 Shawano had intentionally defaulted on the Anchor Bank notes, provoking the foreclosure and conspiring with other members of the Wagner Group to eliminate Frederickson's junior lien by buying back the property at the sheriff's sale using Wagner 22 as a new investment vehicle. Frederickson also asserted that the Wagner Group was liable to it for intentionally causing financial harm.
¶8 The Wagner Group filed a motion to dismiss the complaint for failure to state a claim. It asserted that Frederickson's complaint failed to identify any wrongful or unlawful act sufficient to state a claim for civil conspiracy. Moreover, the Wagner Group asserted that Frederickson's claim of "Liability for Intended Consequences" was "not a cause of action recognized under Wisconsin law, especially when the consequences are achieved through lawful action." Following a hearing, the circuit court granted the motion and dismissed the complaint. In doing so, it rejected Frederickson's invitation to adopt a new form of tort liability and concluded that any claims relating to the inequity of the foreclosure should have been raised in those proceedings.[2] Frederickson now appeals.[3]
DISCUSSION
¶9 A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. Data Key Partners v. Permira Advisers LLC , 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693. Whether a complaint states a claim upon which relief can be granted is a question of law that we review independently. Id. , ¶17. We accept the facts alleged in the complaint as true for purposes of our review. Id. , ¶18.
¶10 We begin by analyzing Frederickson's civil conspiracy claim. "Civil conspiracy involves 'a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful.' " North Highland Inc. v. Jefferson Mach. & Tool Inc. , 2017 WI 75, ¶25, 377 Wis. 2d 496, 898 N.W.2d 741, reconsideration denied , 2017 WI 94, 378 Wis. 2d 225, 904 N.W.2d 373 (citation omitted). A civil conspiracy claim has three elements: (1) the formation and operation of a conspiracy; (2) wrongful acts done pursuant to the conspiracy; and (3) damage resulting from those acts. Id. The plaintiff must allege facts showing "that the acts done in furtherance of the conspiracy were wrongful." Edwardson v. American Family Mut. Ins. Co. , 223 Wis. 2d 754, 760, 589 N.W.2d 436 (Ct. App. 1998). Prior cases have occasionally referred to the foregoing standards by stating in the disjunctive that the plaintiff must allege facts showing that acts done in furtherance of the conspiracy were "illegal or wrongful." See Onderdonk v. Lamb , 79 Wis. 2d 241, 248, 255 N.W.2d 507 (1977) (emphasis added) (citation omitted). It is this disjunctive reference to the terms "illegal" and "wrongful" onto which Frederickson latches.
¶11 Specifically, Frederickson argues the Wagner Group (and, by extension, the circuit court) misinterpreted the nature of its civil conspiracy claim. According to Frederickson, it is "not alleging that the foreclosure itself was unlawful; the alleged conspiracy amounts to the entire scheme : the deliberate default, the formation of Wagner 22, and the later buyback of the property." Frederickson argues that this scheme was wrongful, even if not unlawful, and it criticizes the Wagner Group for its "fixation on the concept of lawfulness." Thus, in Frederickson's view, the terms "unlawful" and "wrongful" have different meanings, at least in that even lawful activities pursued through lawful means can nonetheless be "wrongful" if they are done with an intent to cause some "harm" to another person.
¶12 Frederickson provides no citation to any legal authority in which lawful conduct and means were used to achieve a "wrongful" result, thereby supplying an actionable basis for civil conspiracy. Our courts have oftentimes used the terms "wrongful" and "unlawful" interchangeably when describing the elements of civil conspiracy. See, e.g. , Scarpace v. Sears, Roebuck & Co. , 113 Wis. 2d 608, 611, 335 N.W.2d 844 (1983) (holding an employee's discharge was not wrongful under state law, and therefore was not unlawful for purposes of supporting a civil conspiracy claim); Onderdonk , 79 Wis. 2d at 246-47 (equating unlawful acts or means to civil wrongs); Modern Materials, Inc. v. Advanced Tooling Specialists, Inc. , 206 Wis. 2d 435, 447, 557 N.W.2d 835 (Ct. App. 1996) (holding that former manager and employees of a corporation did not engage in a wrongful or unlawful act by planning to start their own business where they did not owe fiduciary duties to their former company and were not contractually prohibited from engaging in competitive endeavors).
¶13 Consistent with these authorities, our view is that the terms "wrongful" and "unlawful" generally capture the same concept: that the conduct or means used to effectuate the civil conspiracy must itself violate some recognized legal norm. See Modern Materials , 206 Wis. 2d at 447 ("[T]he 'unlawful' act need not be a criminal act because any willful, actionable violation of a civil right is sufficient."). This view is in line with Onderdonk , one of the seminal cases regarding the civil conspiracy cause of action in Wisconsin, which endorsed the following language from a treatise on the matter:
Facts should also be alleged which show that the acts done in pursuance of the conspiracy were illegal or wrongful, or that they were done for an unlawful purpose or by an unlawful means, unless the alleged conspiracy itself has for its purpose the doing of an unlawful act. An averment that a party has acted unlawfully without showing what he did is not sufficient as an averment of issuable facts, and, on the other hand, an allegation of a lawful act is not sufficient to support a charge of conspiracy.
Onderdonk , 79 Wis. 2d at 248 (citation omitted; emphasis added).
¶14 Here, the circuit court properly dismissed Frederickson's civil conspiracy claim because the complaint alleges only facts describing a series of lawful acts. None of the acts on which Frederickson rests its conspiracy claim-the deliberate default on a mortgage note, the formation of a separate entity by two members associated with the former property owner, and the purchase of the property at a sheriff's sale by that separate entity-are unlawful as to Frederickson, whether separately or in combination. They also are not unlawful means to achieve a lawful end.[4]
¶15 Furthermore, to the extent Frederickson's argument is that "an unlawful purpose" existed insomuch as the Wagner Group was attempting to extinguish Frederickson's judgment lien, Frederickson is incorrect. An attempt to lawfully extinguish a junior lien on real property is neither an unlawful purpose nor an unlawful result. Frederickson correctly observes that its junior lien represents a property interest, but junior lienholders often may find their rights extinguished without compensation. As relevant here, a junior lienholder is always at risk that the amount generated at a foreclosure sale will be insufficient to pay all the debts associated with the property. It is precisely because of this risk that the statutes recognize the right of a junior lienholder to redeem the property and subrogate itself to the rights of the plaintiff as to a foreclosure judgment. See WIS. STAT. § 846.15 (2017-18). For these reasons, the extinguishment of a junior lien, even if done intentionally, is neither uncommon nor improper. As such, the complaint fails to state a claim for civil conspiracy.
¶16 The complaint also fails to state a claim for "liability for intended consequences," or what Frederickson calls a "prima facie tort." Frederickson concedes that Wisconsin law currently does not recognize such a cause of action. As a result, Frederickson draws generally from the RESTATEMENT (SECOND) OF TORTS , which states:
One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability.
RESTATEMENT (SECOND) OF TORTS § 870 ( AM. LAW INST. 1979). Frederickson notes that other states, including New York and Missouri, have recognized the "prima facie tort" as a sort of "catch all" for harmful intentional conduct that would otherwise not be actionable.
¶17 Like the circuit court, we conclude it is not this court's role to adopt a significant, new form of tort liability in Wisconsin. Our function is primarily error correcting. Cook v. Cook , 208 Wis. 2d 166, 188, 560 N.W.2d 246 (1997). In some cases we must necessarily develop the law, but the primary responsibility for that function falls to our supreme court. Id. at 188-89. Indeed, the purpose of the supreme court is to "oversee and implement the statewide development of the law." Id. (citing State v. Schumacher , 144 Wis. 2d 388, 405, 424 N.W.2d 672 (1988) ). As a result, if a new residual form of tort liability is to be recognized in Wisconsin, we believe our supreme court should make that declaration. Frederickson's complaint is insufficient to state a claim for a residual "prima facie tort" because such a claim is not recognized under existing law.
By the Court. -Judgment affirmed.
Not recommended for publication in the official reports.

The complaint also alleged that Wagner and Decaster were personally liable for Frederickson's damages. The dismissal of those claims is not at issue on appeal.

Because we conclude the complaint was insufficient as a matter of law, we need not address the circuit court's separate rationale regarding the effect of claim preclusion. See Glendenning's Limestone & Ready-Mix Co. v. Reimer , 2006 WI App 161, ¶14, 295 Wis. 2d 556, 721 N.W.2d 704 ("[W]e may affirm the circuit court on an alternative ground as long as the record is adequate and the parties have the opportunity to brief the issue on appeal.").

Frederickson's brief-in-chief improperly uses party designations in its argument sections in violation of Wis. Stat. Rule 809.19(1)(i) (2017-18). Meanwhile, the Wagner Group improperly cites to an unpublished per curiam opinion in violation of Wis. Stat. Rule 809.23(3) (2017-18). We admonish counsel for each party that future violations of the Rules of Appellate Procedure may result in sanctions, including the striking of the offending document or the imposition of costs. See Wis. Stat. Rule 809.83(2) (2017-18).

For the first time in its reply brief, Frederickson contends there was an unlawful act in this case: the breach of the loan agreements with Anchor Bank. We generally do not consider arguments made for the first time in reply. See State v. Reese , 2014 WI App 27, ¶14 n.2, 353 Wis. 2d 266, 844 N.W.2d 396. In any event, even if the defaults constituted unlawful acts, they were unlawful only as to the bank. Frederickson was not a party to those contracts, nor has it attempted to show the bank notes were entered into directly and primarily for its benefit. See Schell v. Knickelbein , 77 Wis. 2d 344, 348-49, 252 N.W.2d 921 (1977) (holding that only a third-party beneficiary may sue on a contract to which he or she is not a party).