GENERAL AUTOMOTIVE MANUFACTURING COMPANY, Respondent, v. SINGER, Appellant.

*March 6—April 2, 1963.*

For the appellant there was a brief by *Camp & Camp* of Wauwatosa, and oral argument by *Mark M. Camp*.

For the respondent there was a brief by *Hersh & Corry* of Milwaukee, and oral argument by *Frederick Hersh*.

BROWN, C. J. Appellant's brief informs us, "The evidence adduced at the trial was for the most part without dispute and, therefore, the trial court's findings are not conclusive upon appeal," citing *Weigell v. Gregg* (1915), 161 Wis. 413, 154 N. W. 645, and other cases. Insofar as it per-

tains to undisputed evidence we agree with this proposition. We have carefully reviewed the evidence and have ourselves reached conclusions as stated by the trial court and set forth in its findings of fact, as follows:

"3. That heretofore and on or about the 28th day of March, 1953, the plaintiff hired and employed the defendant as general manager of its business and affairs and the defendant accepted such employment under and pursuant to a written contract.

"4. That said contract of employment was for a term of one (1) year from March 30, 1953, to March 29, 1954, and was renewed for a period of two (2) years to March 28, 1956, and thereafter was extended for an indefinite period of time and continued in existence with no change either in the duties the defendant performed or the compensation the defendant received (one reduction in rate mutually agreed to) including the commission of 3% of the plaintiff's gross sales. That the said contract was finally terminated and the defendant left the employ of the plaintiff on or about May 7, 1959.

"5. That subsequent to March 28, 1954, the defendant was in the employ of the plaintiff on the same terms and conditions provided in the written contract of March 28, 1953, subject to terminate at the pleasure of either party.

"6. That in and by said contract as aforesaid, the plaintiff promised and agreed to pay to the defendant as compensation, a fixed monthly salary together with a sum equal to 3% of the gross sales of the plaintiff.

"7. That the plaintiff performed all of the terms, covenants, and conditions of said contract of employment on its part to be performed during the term thereof.

"8. That in and by said contract, in consideration of compensation to be paid by the plaintiff to the defendant, the defendant promised and agreed:

"A. To devote his entire time, skill, labor, and attention to said employment, during the term of this employment, and not to engage in any other business or vocation of a permanent nature during the term of this employment, and to observe working hours for five and one-half days.

"B. Not to, either during the term of his employment, or at any time thereafter, disclose to any person, firm, or corporation any information concerning the business or affairs of the employer which he may have acquired in the course of or as incident to his employment hereunder, for his own benefit, or to the detriment or intended or probable detriment of the employer.

"9. That the defendant under the agreement as manager was a fiduciary agent with respect to solicitation of business for the plaintiff and as such was bound to the exercise of the utmost faith and loyalty to his principal and employer."

Although stated as a finding of fact, Finding 10 is mainly a conclusion of law. It produces the principal issue in the case and deserves further discussion. It reads:

"10. That the defendant breached his contract of employment with the plaintiff and violated the duty of loyalty which he owed to the plaintiff and his fiduciary duty of general manager thereof during the existence of such employment by engaging in business activities directly competitive with the plaintiff, to wit, by obtaining orders from a customer for his own account."

The record leaves no room for doubt of the correctness of Finding 11, as follows:

"11. That thereafter, instead of turning such orders over to the plaintiff the defendant turned such orders over to other concerns to be filled, collected the proceeds thereof from the customers for his own account, and kept the profits accruing therefrom."

Finding 12 is:

"That such activities of the defendant were carried on in secret and without the knowledge of the plaintiff."

The evidence on which Finding 12 is based is in dispute. It is not against the great weight and clear preponderance of the evidence and the finding should not be disturbed.

Further findings of fact that Singer breached his contract of employment, violated his fiduciary duty of general manager of Automotive, secretly engaged in competition with Automotive, and kept the profits accruing from such competition are hotly disputed. Singer also disputes the amount of his liability, if any.

Study of the record discloses that Singer was engaged as general manager of Automotive's operations. Among his duties was solicitation and procurement of machine-shop work for Automotive. Because of Singer's high reputation in the trade he was highly successful in attracting orders.

Automotive is a small concern and has a low credit rating. Singer was invaluable in bolstering Automotive's credit. For instance, when collections were slow for work done by Automotive, Singer paid the customer's bill to Automotive and waited for his own reimbursement until the customer remitted. Also, when work was slack, Singer set Automotive's shop to make parts for which there were no present orders and himself financed the cost of materials for such parts, waiting for recoupment until such stockpiled parts could be sold. Some parts were never sold and Singer personally absorbed the loss upon them.

As time went on, a large volume of business attracted by Singer was offered to Automotive but which Singer decided could not be done by Automotive at all, for lack of suitable equipment, or which Automotive could not do at a competitive price. When Singer determined that such orders were unsuitable for Automotive he neither informed Automotive of these facts nor sent the orders back to the customer. Instead, he made the customer a price, then dealt with another machine shop to do the work at a less price, and retained the difference between the price quoted to the customer and the price for which the work was done. Singer was actually behaving as a broker for his own profit in a

field where by contract he had engaged to work only for Automotive. We concur in the decision of the trial court that this was inconsistent with the obligations of a faithful agent or employee.

Singer finally set up a business of his own, calling himself a manufacturer's agent and consultant, in which he brokered orders for products of the sort manufactured by Automotive, —this while he was still Automotive's employee and without informing Automotive of it. Singer had broad powers of management and conducted the business activities of Automotive. In this capacity he was Automotive's agent and owed a fiduciary duty to it. 13 Am. Jur., Corporations, p. 948, sec. 997. Under his fiduciary duty to Automotive Singer was bound to the exercise of the utmost good faith and loyalty so that he did not act adversely to the interests of Automotive by serving or acquiring any private interest of his own. *Bank of California v. Hoffmann* (1949), 255 Wis. 165, 38 N. W. (2d) 506, 39 N. W. (2d) 280. He was also bound to act for the furtherance and advancement of the interest of Automotive. *Shevel v. Warter* (1950), 256 Wis. 503, 41 N. W. (2d) 603.

If Singer violated his duty to Automotive by engaging in certain business activities in which he received a secret profit he must account to Automotive for the amounts he illegally received. 2 Am. Jur., Agency, p. 215, sec. 268.

The present controversy centers around the question whether the operation of Singer's sideline business was a violation of his fiduciary duty to Automotive. The trial court found this business was conducted in secret and without the knowledge of Automotive. There is conflicting evidence regarding this finding but it is not against the great weight and clear preponderance of the evidence and, therefore, cannot be disturbed. *Central Refrigeration, Inc., v. Monroe* (1951), 259 Wis. 23, 47 N. W. (2d) 438.

The trial court found that Singer's sideline business, the profits of which were $64,088.08, was in direct competition with Automotive. However, Singer argues that in this business he was a manufacturer's agent or consultant, whereas Automotive was a small manufacturer of automotive parts. The title of an activity does not determine the question whether it was competitive but an examination of the nature of the business must be made. In the present case the conflict of interest between Singer's business and his position with Automotive arises from the fact that Singer received orders, principally from a third party called Husco, for the manufacture of parts. As a manufacturer's consultant he had to see that these orders were filled as inexpensively as possible, but as Automotive's general manager he could not act adversely to the corporation and serve his own interests. On this issue Singer argues that when Automotive had the shop capacity to fill an order he would award Automotive the job, but he contends that it was in the exercise of his duty as general manager of Automotive to refuse orders which in his opinion Automotive could not or should not fill and in that case he was free to treat the order as his own property. However, this argument ignores, as the trial court said, "defendant's agency with plaintiff and the fiduciary duties of good faith and loyalty arising therefrom."

Rather than to resolve the conflict of interest between his sideline business and Automotive's business in favor of serving and advancing his own personal interests, Singer had the duty to exercise good faith by disclosing to Automotive all the facts regarding this matter. 2 Am. Jur., Agency, p. 217, sec. 269. Upon disclosure to Automotive it was in the latter's discretion to refuse to accept the orders from Husco or to fill them if possible or to subjob them to other concerns with the consent of Husco if necessary, and the profit, if any, would belong to Automotive. Automotive

would then be able also to decide whether to expand its operations, install suitable equipment, or to make further arrangements with Singer or Husco. By failing to disclose all the facts relating to the orders from Husco and by receiving secret profits from these orders, Singer violated his fiduciary duty to act solely for the benefit of Automotive. Therefore he is liable for the amount of the profits he earned in his sideline business.

Singer contends that the doctrine of "corporate opportunity" applies in the case at bar and that the elements of the doctrine are not satisfied under the facts of this case.

The doctrine of corporate opportunity is a species of the duty of fiduciary to act with undivided loyalty. This doctrine applies to the acquisition of property, tangible or intangible, present or future, of a person who occupies a fiduciary relationship to a corporation which is in opposition to the corporation. *Gauger v. Hintz* (1952), 262 Wis. 333, 351, 55 N. W. (2d) 426. Although the elements of the breach of the fiduciary duty in this doctrine are similar to those in the present case, presently we are concerned with the operation of a business by an agent in competition with a corporation and the retention of secret profits arising therefrom and not with the narrow question of the acquisition of property in opposition to a corporation.

We conclude that Singer's independent activities were in competition with Automotive and were in violation of his obligation of fidelity to that corporation, as stated in Finding of Fact 10, and Singer must account for his profits so obtained.

During the trial the parties stipulated that in the event the court should find that Automotive was entitled to recover profits realized by Singer in his sideline business, Singer should be given a credit equal to three percent of the gross sales of that business. Based upon this stipulation the sum of

$64,088.08 would be reduced by $10,183. Although this stipulation was made in open court and entered into the record the trial court did not recognize it and assessed the amount of damages as $64,088.08, instead of $53,905.08, as the stipulation would require.

Automotive does not contend this part of the stipulation was procured through fraud. Its contention is that Singer would not have been able to deduct from his damages the amount of commissions he would have earned had Automotive received the orders from Husco. Without the interposition of the stipulation Singer would not have been able to receive a credit against the amount he is liable to Automotive. *Bockemuhl v. Jordan* (1955), 270 Wis. 14, 70 N. W. (2d) 26; *Faultersack v. Clintonville Sales Corp.* (1948), 253 Wis. 432, 34 N. W. (2d) 682. However, the parties were free to limit the amount of damages and in this case to allow a credit. We see no reason why this part of the stipulation is not binding upon the parties and should not be honored by the court.

Concurring with the learned trial court, we conclude that Singer's operations were in competition with his employer, Automotive, and from which he received undisclosed personal profits for which he must account. But the recovery by Automotive must be limited by Automotive's stipulation. Therefore, the judgment should be modified reducing the recovery allowed by the trial court, $64,088.08, by $10,183, resulting in a judgment for plaintiff of $53,905.08 and costs.

*By the Court.*—Judgment modified as stated in the opinion and, as so modified, affirmed.

WILKIE, J., took no part.