MODERN MATERIALS, INC., Plaintiff-Appellant,†

v.

ADVANCED TOOLING SPECIALISTS, INC., Corbett W. Harbor, James S. Luebke and Bruce W. Wiater, Defendants-Respondents.

Court of Appeals

*No. 95–3525. Submitted on briefs September 3, 1996.—Decided November 13, 1996.*

(Also reported in 557 N.W.2d 835.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Howard T. Healy* of *Di Renzo and Bomier* of Neenah.

On behalf of the defendants-respondents, the cause was submitted on the brief of *John C. Wenning* of *Sigman, Janssen, Stack, Wenning & Sutter* of Appleton.

Before Brown, Nettesheim and Snyder, JJ.

SNYDER, J. Modern Materials, Inc., appeals from the circuit court's grant of summary judgment to Advanced Tooling Specialists, Inc., and its corporate officers, Corbett W. Harbor, James S. Luebke and Bruce W. Wiater (collectively, ATS). On appeal, Modern Materials argues that summary judgment was improperly granted because there were material issues of fact with regard to its claims that: (1) Harbor breached a fiduciary duty; and (2) Harbor, Luebke and Wiater engaged in a conspiracy for the purpose of damaging the business of Modern Materials.[1]

---

[1] The circuit court granted summary judgment on each of four causes of action. In addition to the issues appealed, Modern Materials had argued that Harbor, Luebke and Wiater had breached a duty of loyalty while employees of Modern Materials, and that Harbor had misrepresented himself as a loyal

439

We conclude that Harbor's duties for Modern Materials did not rise to the level of authority necessary to find that he was a fiduciary of the company. The second claim—that Harbor, Lüebke and Wiater engaged in a conspiracy—was based on Modern Materials' underlying allegation that Harbor's activities with ATS violated a fiduciary obligation. Because of our conclusion that Harbor did not have a fiduciary duty to Modern Materials, there is no factual predicate to support the second claim. Accordingly, we affirm the grant of summary judgment to ATS.

Harbor joined Modern Materials in 1988. At that time the company was organized into three divisions: the Contract Machinery Division headed by the owner, Steven Di Renzo (Di Renzo); the Repair and Maintenance Division headed by another individual; and the Tooling Division headed jointly by a design engineer and Harbor. In March 1992, Harbor was promoted from a position as an hourly employee to a salaried employee and given the title of plant manager. In deposition testimony, Di Renzo stated that he considered Harbor to be the "number two" person in the organization at that time.

Harbor's duties as plant manager included attendance at "management meetings."[2] Di Renzo admitted that Harbor reported to him for decisions on such things as day-to-day operations, hiring new people,

employee when he signed a "phantom stock agreement" in February 1991. Neither of these issues is raised in Modern Materials' appeal as a basis to contest the court's grant of summary judgment.

[2] While Di Renzo claimed that Harbor attended board of directors meetings, Di Renzo's father, Robert, who was the other corporate officer during this time, stated that Harbor was only present at "management meetings."

quotes, ordering materials and scheduling. Di Renzo testified that he believed that Modern Materials had two levels of "officers."[3] In addition to the "real officers," he also used the term "officers" as a generic description of "key people." In his deposition, Di Renzo's father, Robert, testified that while Harbor would attend management meetings, Harbor did not attend what he considered "directors' meetings." During his employment, Harbor prepared a five-year business plan for Modern Materials at the request of Di Renzo; however, he had no input on whether the plan would be adopted.

During most of 1992, Harbor was engaged in setting up a new operation which would segregate the tooling division. During that time, additional employees were hired by the company. Luebke was hired to "spearhead the 35% increase in the tooling operation," and another individual was hired to handle contract machining.

During this time period, Harbor took part in discussions with Luebke and another employee of Modern Materials to explore the possibility of establishing their own tooling company. In January 1993, an accountant was retained to put together a business plan for the proposed company. Approximately one month later, Di Renzo heard through a banker that at least two of his employees were attempting to secure financing for a tool and die business. Di Renzo subsequently terminated Harbor, Luebke and Wiater from their employment at Modern Materials.

---

[3] At the deposition hearing, Di Renzo stated, "I am president and treasurer, Robert Di Renzo is vice president and secretary." In answer to a later question, Di Renzo admitted, "The state recognizes the company['s] . . . officers [as] Steve Di Renzo and Robert Di Renzo."

Modern Materials filed a complaint which alleged, inter alia, that Harbor breached a fiduciary duty to Modern Materials and that the three employees engaged in a conspiracy "for the purposes of injuring and damaging the Plaintiff and its business." The court granted summary judgment to ATS on all claims. Modern Materials now appeals.

We review summary judgment decisions de novo, applying the same methodology as the trial court. *Armstrong v. Milwaukee Mut. Ins. Co.,* 191 Wis. 2d 562, 568, 530 N.W.2d 12, 15 (Ct. App. 1995), *aff'd,* 202 Wis. 2d 258, 549 N.W.2d 723 (1996). That methodology, set forth in § 802.08(2), STATS., has been recited often and we need not repeat it here. *See Armstrong,* 191 Wis. 2d at 568, 530 N.W.2d at 15. Summary judgment is appropriate where it can be determined as a matter of law that a defendant owes no duty to the plaintiff. *See generally Lisa's Style Shop v. Hagen Ins. Agency,* 181 Wis. 2d 565, 572, 511 N.W.2d 849, 852 (1994) (addressing an insurance agent's duty to an insured). An adverse party may not rest on mere allegations to avoid a summary judgment motion, but must set forth specific facts showing that there is a genuine issue for trial. Section 802.08(3).

It is well established that a corporate officer or director is under a fiduciary duty of loyalty, good faith and fair dealing in the conduct of corporate business. *Racine v. Weisflog,* 165 Wis. 2d 184, 190, 477 N.W.2d 326, 329 (Ct. App. 1991). An officer or director is precluded from exploiting his or her position for personal gain when the benefit or gain properly belongs to the corporation. *Id.* In a federal district court case which examined the issue of fiduciary duty under Wisconsin

law and relied on *Racine*, the court outlined the analysis for determining whether an individual has a fiduciary duty within a corporation. *See CSFM Corp. v. Elbert & McKee Co.*, 870 F. Supp. 819, 830-31 (N.D. Ill. 1994).

■■■

In order to show that an individual breached a fiduciary duty, the first element which must be established is that the defendant is an officer and therefore a fiduciary duty is owed. *See id.* at 832. An officer is "a person charged with important functions of management such as a president, vice president, treasurer, etc." *Id.* at 833 (quoted source omitted). Among the facts a court may consider are: (1) the individual's managerial duties; (2) whether the position occupied is one of authority; and (3) whether the individual possesses superior knowledge and influence over another and is in a position of trust. *See id.*

In *CSFM*, the court determined that the defendants were "entrusted with important managerial functions, such as administering and operating the company; recruiting key personnel . . .; signing checks drawn on the company's bank account; and to some extent helping Plaintiffs find a buyer for the company." *Id.* The *CSFM* court noted that two of the defendants had signed "Personal Services Agreements" in which they agreed to serve as officers[4] and concluded that their duties as fiduciaries arose from their positions and responsibilities within the plaintiffs' corporation. *Id.*

---

[4] The third defendant held the position of president and chief executive officer of the corporation. The court summarily concluded that therefore there was "no genuine issue that he was an officer." *CSFM Corp. v. Elbert & McKee Co.,* 870 F. Supp. 819, 832 (N.D. Ill. 1994).

As outlined in *CSFM,* the initial inquiry must focus on whether the individual is a corporate officer of the company. If there remains a question as to the individual's position within the organization, we conclude that the controlling question is whether an employee is vested with policy-making authority or has the ability to make decisions which bind the company. In the case of Harbor, the evidence put forth by Modern Materials does not convince us that Harbor's duties within the corporate framework rose to that level.

Both Di Renzo and Robert admitted that Harbor was never listed as a corporate officer. Di Renzo testified:

> Q: Corbett Harbor, Jim Luebke and Bruce Wiater were never officers of Modern Materials; is that also true?
>
> A: Officers as far as the state is concerned?
>
> . . . .
>
> A: Correct.

Robert also conceded:

> Q: Did Corbett Harbor ever attend any of the director meetings while you were a director of Modern?
>
> A: No. Now . . . [d]o you mean the meetings that you're talking about on the - in the minute book, those meetings, is that what you're speaking of?
>
> Q: Well, wait a minute, Mr. Di Renzo. I thought you told me that those were the only director meetings you had and those were the only minutes you had, so obviously I'm talking about those.
>
> A: No, he was not in any of those meetings.

There was also testimony that Harbor began his employment as an hourly employee. He was later promoted to plant manager, with additional responsibilities for training personnel and the day-to-day operations in the plant. While Di Renzo suggested that Harbor had authority to hire and fire personnel without consulting with him, Harbor had never done so. Di Renzo also testified that Harbor had the authority to purchase equipment, but he had never exercised that authority either. Furthermore, although Harbor had at one point signed a noncompete agreement with Modern Materials, this was terminated in March 1992.

Our independent review of the record convinces us that Harbor was not titled a "corporate officer" at Modern Materials, nor did his responsibilities and authority rise to such a level. Based upon that conclusion, Harbor did not have a fiduciary duty to Modern Materials. Therefore, we need not address whether his actions in setting up ATS contravened such a duty. *Cf. id.* at 832.

Modern Materials disputes the conclusion that Harbor owed it no fiduciary duty, arguing that the law in Wisconsin clearly "applie[s] the fiduciary duty to key managerial employees." Modern Materials then offers two cases in support of this argument: *General Automotive Mfg. Co. v. Singer,* 19 Wis. 2d 528, 120 N.W.2d 659 (1963), and *Standard Brands, Inc. v. United States Partition & Packaging Corp.,* 199 F. Supp. 161 (E.D. Wis. 1961).[5]

---

[5] We consider the analysis in *Standard Brands, Inc. v. United States Partition & Packaging Corp.,* 199 F. Supp. 161 (E.D. Wis. 1961), only to the extent that Modern Materials relies upon it in its appellate argument.

■ While we agree with Modern Materials' interpretation that certain managerial employees within an organization may be bound by fiduciary obligations, that does not negate our conclusion that Harbor's position at Modern Materials did not rise to that level. The cases cited by Modern Materials in which the court held that a managerial employee breached a fiduciary obligation are distinguishable on their facts.

In *General Automotive*, the court found that the employee, who had the title of general manager, breached a fiduciary duty when he "secretly engaged in competition with [his employer] and kept the profits accruing from such competition." *General Automotive*, 19 Wis. 2d at 532, 120 N.W.2d at 661. As the general manager, the employee had duties of solicitation and procurement of machine shop work. While serving as general manager, he was brokering the same type of work to another machine shop without his employer's knowledge and pocketing the profits. *Id.* at 532, 120 N.W.2d at 662. The court noted that the profits from the sideline business totaled $64,088.08. The *General Automotive* court found that the general manager was an agent for the company and therefore owed the company a fiduciary duty. The court then held that his brokering activities violated his duty to act solely for the benefit of his employer. *Id.* at 534-35, 120 N.W.2d at 663.

The second case offered by Modern Materials is also factually different. The specific conduct which violated the fiduciary obligation in *Standard Brands* involved "appropriation of their principal's property without full disclosure" and the use of "secret and confidential information." *Standard Brands,* 199 F. Supp. at 172. The defendants in that case copied drawings

446

and plans for a machine modification which had been developed by the employer and was unique to the company's manufacturing operation and utilized those plans to develop the machinery necessary to set up a competing enterprise. *See id.* at 171.

In the cases offered by Modern Materials, the defendant employees either engaged in a competing enterprise while employed or appropriated a "trade secret" in order to facilitate a competing business. Harbor's activities with regard to ATS did not rise to that level. The court in *Standard Brands* also noted that although "[e]very agent owes his principal the duty of undivided loyalty," *id.* at 171, even an *agent* is free to engage in competition with a principal after the employment relationship terminates, *id.* at 172. Additionally, an agent may "plan and develop his competitive enterprise during the course of his agency provided the particular activity engaged in is not against the best interests of [the] principal." *Id.*

Modern Materials also argues that Harbor's actions, in concert with two other former employees, Luebke and Wiater, constituted a conspiracy. The supreme court has defined a conspiracy as "a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful." *Cranston v. Bluhm,* 33 Wis. 2d 192, 198, 147 N.W.2d 337, 340 (1967) (quoted source omitted).

The "unlawful" act need not be a criminal act because any willful, actionable violation of a civil right is sufficient. *Id.* The gravamen of a civil action for conspiracy is the civil wrong which has been committed

pursuant to the conspiracy and which results in damage to the plaintiff. *Onderdonk v. Lamb,* 79 Wis. 2d 241, 246, 255 N.W.2d 507, 509 (1977). To state a cause of action for civil conspiracy, the plaintiff must allege: "(1) The formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts." *Id.* at 247, 255 N.W.2d at 510. Facts should be alleged which show that the acts done in furtherance of the conspiracy were wrongful. *Id.* at 248, 255 N.W.2d at 510. An averment that a party acted unlawfully without showing what he or she did is not sufficient, nor will an allegation of a lawful act support a charge of conspiracy. *Id.*

■■■

Because of our conclusion that there is no basis for Modern Materials' claim that Harbor owed a fiduciary duty to the corporation, there is no factual basis for Modern Materials' claim that Harbor's actions, in concert with Luebke and Wiater, were a conspiracy. The conspiracy claim necessarily flows from Modern Materials' contention that Harbor owed it a fiduciary duty. The law is clear that after termination, absent a contractual agreement to the contrary, an employee is free to engage in competition with his or her principal. *See Standard Brands,* 199 F. Supp. at 172. We therefore affirm the circuit court's grant of summary judgment to ATS.

*By the Court.*—Order affirmed.