INFOCORP, LLC d/b/a InfoCor Communications Company, LLC, Plaintiff-Appellant,

v.

Christopher HUNT and Tierney Brothers, Inc., Defendants-Respondents.

Court of Appeals

*No. 2007AP2887. Submitted on briefs October 6, 2009. —Decided December 8, 2009.*

2010 WI App 3

(Also reported in 780 N.W.2d 178.)

46

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Christopher P. Banaszak* and *Robert S. Driscoll* of *Reinhart Boerner Van Deuren S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Sally A. Piefer* of *The Schroeder Group, S.C.* of Waukesha.

Before Fine, Kessler and Brennan, JJ.

¶ 1. KESSLER, J. At issue in this case are claims by InfoCorp, LLC, d/b/a InfoCor Communications Company, LLC ("InfoCor") against its former employee, Christopher Hunt, and Hunt's subsequent employer, Tierney Brothers, Inc.[1] InfoCor appeals from a judgment dismissing all of its claims against Tierney Brothers. InfoCor also appeals from non-final orders dismissing most of its claims against Hunt.[2] InfoCor argues that the trial court erred when it dismissed in whole or in part its claims for breach of duty of loyalty (against Hunt), conspiracy (against Hunt and Tierney Brothers) and tortious interference with business relationships (against Hunt and Tierney Brothers).[3] InfoCor also

---

[1] At both the trial court and on appeal, Hunt and Tierney Brothers have been represented by the same counsel and have filed joint pleadings, motions and briefs. Thus, when discussing their arguments, we refer to them jointly as the Defendants.

[2] We granted leave to appeal by order dated April 28, 2009.

[3] InfoCor does not challenge the dismissal of its other claims against Hunt and Tierney Brothers. Those claims will not be discussed, except to provide background.

argues that the trial court erroneously limited its potential damages related to InfoCor's loss of a particular client.

¶ 2.   We reverse the judgment dismissing InfoCor's claims against Tierney Brothers and the non-final orders dismissing all but one of InfoCor's claims against Hunt. We reverse the order dismissing InfoCor's claim for damages based on the loss of its business relationship with one of its primary customers. We remand for further proceedings not inconsistent with this opinion.

## BACKGROUND

¶ 3.   This case was decided on summary judgment. Some facts provided as background are disputed while others are not.[4] The trial court found the following material facts were undisputed.

¶ 4.   InfoCor is an authorized reseller of technologically advanced chalkboards produced by SMART Technologies ("SMART boards"), projectors and other audiovisual products that are purchased by schools and other entities. Hunt began working for InfoCor in August 2005. His past work experience included working for two of InfoCor's competitors, where he sold SMART boards and projectors to schools and developed a working relationship with CESA 2, one of the twelve Cooperative Educational Service Agency ("CESA") districts in Wisconsin. At InfoCor, Hunt was considered an at-will employee. He did not have written employment, noncompete or confidentiality agreements with InfoCor.

---

[4] Many of these background facts were included in the trial court's lengthy written decision, which was based on its review of over one thousand pages of briefs and exhibits. We take this opportunity to express our appreciation to the trial court for the thoroughness of its factual and legal analysis.

¶ 5.  At InfoCor, Hunt's job was to sell products, including SMART boards, to educational clients in Wisconsin, Illinois and Minnesota. One client particularly relevant to this litigation was CESA 2, which had a cooperative purchasing program that allowed school districts to purchase supplies and services at a reduced cost. During the year Hunt was employed at InfoCor, CESA 2 entered into an agreement with SMART Technologies whereby CESA 2 could purchase SMART board products at a reduced price; this was known as the MAP-E agreement.[5] InfoCor was the only reseller initially authorized by CESA 2 to provide SMART board products.

¶ 6.  In the summer of 2006, Hunt approached a sales manager for Tierney Brothers and indicated an interest in working for Tierney Brothers. Although Hunt was not immediately hired, he continued to express his interest in working for Tierney Brothers. Hunt helped arrange a September 13, 2006 meeting at the CESA 2 offices that was attended by Hunt and representatives of Tierney Brothers. Although the purpose of the meeting is disputed, there is evidence that the manager of cooperative purchasing at CESA 2 understood the meeting to be an effort to have Tierney Brothers become an authorized reseller of SMART board products under the MAP-E Agreement, which would allow Tierney Brothers to sell products to CESA 2.

¶ 7.  On September 18, 2006, Hunt interviewed with Tierney Brothers and was hired. During his last month at InfoCor, Hunt sought to divert specific sales to his new employer. On October 2, 2006, Hunt resigned

_____

[5] We have not identified the reason for this unique name for the agreement.

from InfoCor effective immediately and went to work for Tierney Brothers. At about the same time, Tierney Brothers became an authorized reseller of SMART board products under the MAP-E agreement. On or about January 31, 2007, CESA 2 terminated InfoCor's status as an authorized reseller.

¶ 8. Meanwhile, three days after Hunt resigned from InfoCor, InfoCor filed suit against Hunt. The subsequently filed amended complaint alleged seven claims against Hunt, including: (I) breach of duty of loyalty; (II) theft of trade secrets; (III) computer crimes in violation of WIS. STAT. § 943.70 (2005–06)[6]; (IV) conversion; (V) conspiracy; (VI) injury to business in violation of WIS. STAT. § 134.01 (2005–06); and (VII) tortious interference with business relationships. The amended complaint also alleged Counts II, V, VI and VII against Tierney Brothers.

¶ 9. After extensive discovery, the Defendants moved for summary judgment. InfoCor opposed the motion, arguing that issues of material fact precluded summary judgment, except with respect to Count I. InfoCor argued that it was entitled to summary judgment in its favor on Count I, concerning Hunt's liability for breach of duty of loyalty to InfoCor.

¶ 10. Ultimately, the trial court dismissed all but one of InfoCor's claims.[7] With respect to Count VII, tortious interference with business relationships, the trial court dismissed InfoCor's entire claim against Tierney Brothers and InfoCor's claim that Hunt tor-

---

[6] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[7] Although the trial court initially denied the motion for summary judgment on Count III (computer crimes), it later granted Hunt's motion for reconsideration with respect to that claim and dismissed it. That dismissal was not appealed.

tiously interfered with customer relationships *following* his resignation, but refused to dismiss InfoCor's claim that Hunt tortiously interfered with customer relationships *prior to* his resignation. Finally, the trial court concluded that any potential damages InfoCor might recover could not include damages related to the loss of the CESA 2 relationship because there was not sufficient evidence to create an issue of material fact concerning the loss of any business from CESA 2.

¶ 11.   InfoCor appealed the dismissal of its claims against Tierney Brothers. InfoCor also petitioned this court for leave to appeal from the non-final orders dismissing most of its claims against Hunt. We granted the petition for leave to appeal. This appeal follows.

## STANDARD OF REVIEW

¶ 12.   A party is entitled to summary judgment if, on the affidavits and other summary judgment materials, there are no genuine issues of material fact and the party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). In reviewing the grant or denial of a motion for summary judgment, we apply the same methodology as the trial court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–16, 401 N.W.2d 816 (1987). We view the affidavits and other summary judgment submissions and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *See Johnson v. Rogers Mem'l Hosp., Inc.*, 2005 WI 114, ¶ 30, 283 Wis. 2d 384, 700 N.W.2d 27. Whether an inference is reasonable and whether more than one reasonable inference may be drawn are questions of law. *Hennekens v. Hoerl*, 160 Wis. 2d 144, 162, 465 N.W.2d 812 (1991).

## DISCUSSION

¶ 13. InfoCor challenges the trial court's dismissal of the following claims: (1) Count I, breach of duty of loyalty, against Hunt; (2) Count V, conspiracy, against Hunt and Tierney Brothers; and (3) Count VII, tortious interference with business relationships, against Hunt and Tierney Brothers.[8] These claims will be addressed in turn. We also address InfoCor's challenge to the trial court's decision to limit the damages InfoCor can potentially recover on its claim against Hunt for tortious interference with business relationships.

### I. Count I - Breach of loyalty.

¶ 14. In its complaint, InfoCor alleged that Hunt "was a Major Accounts Manager for InfoCor" who "possessed control over and knowledge of various *key aspects* of InfoCor's business," and that as an employee, "Hunt owed a duty of loyalty to InfoCor." (Emphasis added.) Hunt is alleged to have breached that duty when he "was not honest in his dealings with InfoCor, began competing with InfoCor and interfered with InfoCor's relationships with its customers and suppliers."

¶ 15. The trial court found that undisputed facts supported an inference of Hunt's breach of a duty of loyalty, but that Hunt did not owe a duty of loyalty because of his role at InfoCor. The trial court explained:

---

[8] As noted, part of InfoCor's claim against Hunt for tortious interference with business relationships was not dismissed on summary judgment. The merits of that claim will not be addressed in this appeal, except that we address the damages issue related to that non-dismissed claim. InfoCor does not challenge the dismissal of Counts II, III, IV and VI.

The circumstances surrounding the September 13 meeting support an obvious inference that, by itself, creates an issue of fact as to Hunt's disloyalty. Emails just before this meeting confirm that Hunt was actively promoting Tierney Brothers as a new partner for CESA 2 . . . .

. . . .

. . . Promoting Tierney Brothers as an authorized reseller under the MAP-E agreement was certainly contrary to the interests of InfoCor[] . . . .

. . . [E]mails . . . clearly indicate that during his last month at InfoCor[], Hunt sought to divert specific sales to his new employer . . . .

. . . At a minimum, there is an issue of fact regarding Hunt's loyalty that would defeat summary judgment on this ground.

. . . .

. . . Hunt was clearly InfoCor[]'s employee and agent. However Hunt was not a corporate officer or the "policy making" equivalent of an officer.

The trial court concluded that "Wisconsin cases clearly establish that employees are judged by a different standard and that only officers or policy making employees owe a duty of loyalty," and thus, a salesman in Hunt's position owed no duty of loyalty to his employer. Therefore, the trial court dismissed InfoCor's breach of duty of loyalty claim against Hunt. From that legal conclusion, all other dismissals followed. Based on our review of Wisconsin case law, we disagree with the trial court's legal conclusion, because we conclude that a jury could find that in allegedly acting directly contrary to his employer's interest in the course of performing his

53

specific duties, Hunt breached a duty of loyalty to his employer.

¶ 16. We begin our analysis of the duty of loyalty owed by an employee who is not an officer or director, and does not have equivalent policy making authority, with the Wisconsin Supreme Court's decision in *General Automotive Manufacturing Co. v. Singer*, 19 Wis. 2d 528, 120 N.W.2d 659 (1963). The court considered whether the general manager of a machine shop, Singer, breached his duty of loyalty. Singer's duties included "solicitation and procurement of machine-shop work for Automotive." *Id.* at 532. After a trial, Singer was found by the trial court to have violated his duty of loyalty because he "obtain[ed] orders from a customer for his own account" and then "turned such orders over to other concerns to be filled, collected the proceeds thereof from the customers . . . and kept the profits . . . without the knowledge of [Automotive]." *Id.* at 531. The *General Automotive* court concluded that Singer was liable to Automotive, reasoning:

> Rather than to resolve the conflict of interest between his sideline business and Automotive's business in favor of serving and advancing his own personal interests, Singer had the duty to exercise good faith by disclosing to Automotive all the facts regarding this matter . . . . By failing to disclose all the facts relating to the orders . . . and by receiving secret profits from these orders, Singer violated his fiduciary duty to act solely for the benefit of Automotive. Therefore he is liable for the amount of the profits he earned in his sideline business.

*Id.* at 534–35 (citations omitted). Essentially, Singer was liable for breaching his duty of loyalty because he used the authority of his job to steal business from General Automotive while he was employed by General Automotive.

54

¶ 17. Where a sufficient factual record has been made, our supreme court has upheld a finding that the employee who is not an officer or director breached a duty of loyalty by taking actions within the scope of the employee's responsibilities that were directly contrary to the employer's interest. Similarly, evidence here could support a finding that, like Singer in *General Automotive*, Hunt, while still employed by InfoCor, used his authority at InfoCor to divert business from InfoCor (by withholding customer orders until he joined Tierney Brothers), and to actively attempt to shift business (CESA 2) from InfoCor to Tierney Brothers, thereby breaching his duty of loyalty.

¶ 18. In *Burg v. Miniature Precision Components, Inc.*, 111 Wis. 2d 1, 330 N.W.2d 192 (1983), the court considered the actions of Burg, a manager of the thermoplastic molding department of Miniature Precision Components (MPC), a corporation that produced precision-made plastic parts. *See id.* at 4. Burg's job responsibilities included maintaining adequate production of plastic parts to meet MPC's customer demands. *Id.* However, when production could not be accomplished in-house, Burg had the authority to locate outside vendors to manufacture the needed parts. *Id.* Unbeknownst to his employer, Burg secretly formed a company to produce precision-made plastic parts, then caused business accepted by MPC to be outsourced to Burg's company. *Id.* Burg referred significant quantifies of MPC's orders to his own company and then billed MPC for the outsourced services, without ever disclosing his ownership in the outside vendor. *Id.* at 4–5. In addition, Burg took quantities of material from MPC. *Id.* at 6 n.5.

¶ 19. Before MPC learned of Burg's interests in the outside vendor, he was fired for poor performance

and absenteeism. *Id.* at 5. When MPC learned about Burg's connection to the outside vendor, it discontinued using the vendor and refused to pay the vendor for products it had already delivered. *Id.* at 5–6. The vendor sued MPC to collect the debt and MPC counterclaimed, alleging that Burg, an agent of the vendor, had converted goods belonging to MPC and had violated his duty of loyalty to MPC. *Id.* at 6.

¶ 20.   Analyzing the breach of duty of loyalty issue, our supreme court noted that "the record conclusively demonstrates[] that Burg breached his duty of loyalty to MPC by secretly maintaining an ownership interest in a competing business and engaging in profit-making transactions with his employer." *Id.* at 7. The court concluded that "the very nature of the conflict of interest involved . . . [led] to the conclusion that the disloyalty affected job performance and that MPC did not receive full value for the compensation paid Burg as manager of the molding department." *Id.* at 9. Therefore, the court held, MPC could potentially seek the return of compensation it paid to Burg, and a trial on that issue was warranted. *Id.* at 14. The court also affirmed an award of the profits the vendor made on the sale of plastic parts to MPC, recognizing "the well-established principle of agency law that an agent may not profit from business dealings that are adverse to his or her principal's interest." *Id.* at 15.

¶ 21.   *Burg* recognized that an employee who uses the power of his employment responsibilities to harm his employer breaches his duty of loyalty. The facts of the instant case, similar to those in *Burg*, could support a finding that Hunt breached his duty of loyalty to InfoCor. Specifically, there are facts a jury could choose to believe that suggest Hunt used his responsibility for the CESA 2 relationship, and his sales responsibility for

56

educational institutions in Wisconsin, to the specific detriment of InfoCor while he was employed by InfoCor.

¶ 22. The Wisconsin Court of Appeals weighed in on these issues in 1996 in *Modern Materials, Inc. v. Advanced Tooling Specialists, Inc.*, 206 Wis. 2d 435, 442, 446, 557 N.W.2d 835 (Ct. App. 1996). We concluded that Harbor, an employee who merely explored the possibility of starting a competing business, but did no actual harm to his employer, and did not have job responsibilities that rose to the level of a corporate officer "within the corporate framework," did not owe his employer a "fiduciary duty." *See id.* at 441, 444.

¶ 23. Modern Materials was in the business, among other activities, of tooling machinery. *Id.* at 440. While employed by Modern Materials, Harbor and two other employees explored the possibility of establishing their own tooling company. *Id.* at 441. They had not established the business when Modern Materials heard of these activities and terminated all three individuals. *Id.* Modern Materials then sued the former employees, alleging they had breached a fiduciary duty to Modern Materials and engaged in a conspiracy to harm their employer. *Id.* at 442.

¶ 24. Here, the Defendants rely on *Modern Materials* for the proposition that Hunt, whose job duties likewise did not rise to the policy making level of a corporate officer, likewise did not owe his employer a duty of loyalty. We are not persuaded that *Modern Materials* compels such a conclusion. A jury could conclude that Hunt's breach of loyalty involved direct harm to his employer because of the manner in which he performed his assigned job duties.

¶ 25. We affirmed a summary judgment dismissing Modern Materials' claim. In doing so, we noted that *Standard Brands, Inc. v. United States Partition &*

*Packaging Corp.*, 199 F. Supp. 161, 172 (E.D. Wis. 1961), interpreting Wisconsin law, specifically recognized that an agent may compete with a principal after the employment relationship ends, and may plan and develop the competitive enterprise during his employment " 'provided the particular activity engaged in is not against the best interests' " of the employer. *See Modern Materials*, 206 Wis. 2d at 447 (citation omitted). We also distinguished *General Automotive*, noting that in that case, the employee's breach of his duty of loyalty arose because he was an agent of the company for purposes of soliciting and procuring machine shop work while he brokered the same type of work to another machine shop and kept the profits, all without his employer's knowledge. *See Modern Materials*, 206 Wis. 2d at 446.

¶ 26. *Modern Materials* rejected the argument that an employee whose job responsibilities did not rise to that of a corporate officer could be held liable for planning to go into business against the employer in the future. *See Corporate Express Office Prods., Inc. v. Brown*, Nos. 00C608C & 00C666C, 2001 WL 34381111, at *14 (W.D. Wis. July 18, 2001) (observing that *Modern Materials* "was not concerned with any duty the employee might have had while employed; its focus was on whether he had occupied such a high level in the former company as to be precluded from competing with his former employe[r] after his termination."). The evidence here could support a finding that, unlike the employees in *Modern Materials*, Hunt was not merely exploring the possibility of another job while employed by InfoCor, but was using his position with InfoCor to actively divert business from InfoCor to his successor employer for his own benefit. Consequently, summary judgment against InfoCor was improper.

¶ 27. The Wisconsin Court of Appeals examined these issues again in *Aon Risk Services, Inc. v. Liebenstein*, 2006 WI App 4, ¶ 26, 289 Wis. 2d 127, 710 N.W.2d 175 (Ct. App. 2005), *abrogated on other grounds by Burbank Grease Services, LLC v. Sokolowski*, 2006 WI 103, ¶ 33, 294 Wis. 2d 274, 717 N.W.2d 781. In *Aon*, two employees of a company that sold and serviced commercial property and casualty insurance for businesses left their employer to start the Milwaukee office of a competing business. *Id.*, ¶ 4. The employees had "employment contracts that they would not do anything that prejudiced Aon's right to their undivided loyalty." *Id.*, ¶ 29. Aon sued, alleging, among other claims, breach of the employees' agency and loyalty to Aon. *Id.*, ¶ 5. As material here, it was alleged by Aon that the breach of agency and other duties included giving the competing company confidential Aon information, helping the competing company find a Milwaukee office and using Aon staff to send at least one Aon client promotional materials about the new company. *Id.*, ¶ 25. We noted, in reliance on numerous prior Wisconsin cases, that "[t]here is no doubt but that at least key employees in Wisconsin owe to their employer common-law duties of loyalty—the precise nature of the employment necessary to trigger those duties and, also, the scope of those duties are often blurred at the edges." *Id.*, ¶ 26. We reversed the trial court's grant of summary judgment because we concluded that as to both the employment contract and the common law of agency, "the precise scope of the duties owed by either [of the employees] to Aon requires that the pertinent facts be 'fully developed' at trial." *Id.*, ¶ 29.

¶ 28. As in *Aon*, summary judgment here was improper because the existing evidence could support a finding that Hunt breached his common law duty of loyalty in his employee role as an agent of InfoCor. Thus

InfoCor, like Aon, is entitled to fully develop the pertinent facts at trial.

¶ 29. Finally, in *Burbank Grease*, our supreme court again discussed the duty of loyalty owed by an employee who was not an officer or director. The employer's business was collecting and processing used grease from restaurants and industrial users. *Id.*, 294 Wis. 2d 274, ¶ 2. The employee was Burbank's territory manager, whose duties included oversight of sales people, management of customer relations with industrial clients, and preparation of spreadsheets and billings for Burbank's accounts. *Id.*, ¶ 3. The employee resigned, taking with him the computer spreadsheets and billing records he had earlier obtained, and began working for a competitor. *Id.*, ¶ 6. In its decision, the court focused primarily on construction of WIS. STAT. § 134.90, and whether that statute preempted common law actions involving records not defined by that statute as trade secrets. Concluding that common law remedies remained, the court considered whether the claim that the employee had breached a duty of loyalty to his employer had been properly dismissed on summary judgment. *See Burbank Grease*, 294 Wis. 2d 274, ¶ 41. The court stated:

> A claim for the breach of an agent's duty of loyalty may sound both in tort and in contract. When such a claim is made against an employee, the first question is whether the agent has a fiduciary relationship with the employer. If the employee is a "key employee," then a fiduciary duty of loyalty will exist. *Whether an employee is a "key employee" depends on the precise nature of his or her employment duties, which determination requires a factual inquiry.*
>
> If a duty of loyalty exists, and a third party encourages and profits from a breach of the duty of loyalty, a

claim for aiding and abetting the breach will lie. *This, again, is a fact specific inquiry.*

*Id.*, ¶¶ 42–43 (emphasis added) (citations omitted). The court concluded that breach of duty of loyalty had been sufficiently pled,[9] *see id.*, ¶ 46, reversed the grant of summary judgment and remanded so that "a full factual record" could be made, *see id.*, ¶ 49.

¶ 30. Unlike the state of the record in *Burbank Grease*, here we have a developed record at the summary judgment stage. From that record, as we have seen, a factfinder could conclude that Hunt's employment duties make him a "key employee" in the context of those duties, thus creating, as described above in *Burbank Grease*, a common law duty of loyalty to his employer in relation to those duties. For these reasons, summary judgment against InfoCor was improper. InfoCor is entitled to a trial on its allegation that Hunt used the responsibilities of his job to the detriment of InfoCor, and thus, breached his duty of loyalty to InfoCor.

¶ 31. *Burbank Grease* and previous cases effectively recognize that there may be "key employees" whose job responsibilities are of such a nature, in the context of the employer's business, that they may be used to harm the employer. If such employees do harm to their employer during the course of their employment, the employer has a common law remedy for breach of the employee's duty of loyalty. Whether an

---

[9] In *Burbank Grease Services, LLC v. Sokolowski*, 2006 WI 103, 294 Wis. 2d 274, 717 N.W.2d 781, the plaintiff, Burbank, alleged: "As Procurement/Territory Manager at Burbank, [the employee] owed Burbank certain duties of an agent to a principal, including, a duty of loyalty and a duty not to disclose information material to his agency." *Id.*, ¶ 46.

employee has such responsibilities as an agent of the employer to create a duty of loyalty must of necessity be determined in the context of the employer's business and the specific role the employee plays in that business. As we have seen, case law demonstrates that for an employee who is not an officer or director, the status of "key employee" is determined by the specific job responsibilities and the harm to the employer resulting from misuse of those responsibilities.

¶ 32.   For the foregoing reasons, we reverse the trial court grant of summary judgment dismissing InfoCor's claim that Hunt owed a duty of loyalty to InfoCor which he breached. We remand that claim so that the pertinent facts may be fully developed at trial.

## II. Count V – Conspiracy.

¶ 33.   InfoCor asserts that the trial court erroneously dismissed the conspiracy claim against both Hunt and Tierney Brothers because it concluded that InfoCor did not have a claim for breach of duty of loyalty against Hunt and, therefore, there was no wrongful act to support the conspiracy claim. Because we have reversed the trial court's dismissal of the breach of duty of loyalty claim, and because some acts from which Hunt's breach of his duty of loyalty may be inferred were joined in by Tierney Brothers, when Tierney Brothers knew Hunt worked for InfoCor, summary judgment dismissing the conspiracy claim against Hunt and Tierney Brothers was also improper.

## III. Count VII – Tortious Interference with Business Relationships.

¶ 34.   This claim is also dependent on the viability of the breach of duty of loyalty claim. Because we have

reversed the grant of summary judgment which dismissed the breach of duty of loyalty, reversal of summary judgment of this count as it relates to both Hunt and Tierney Brothers is required.

## IV. Damages.

¶ 35.   By the time the trial court considered the damages question in its oral ruling, it had already dismissed all but two claims, only one of which is relevant on appeal:   Count VII, tortious interference with business relationships. The trial court addressed only a single damages issue:   whether InfoCor could "prove that any tortious conduct by Hunt caused [InfoCor] to lose its status as an authorized seller [of SMART boards]." The trial court found:

> [I]t's very clear that Hunt was the principal basis on which [InfoCor's] relationship with CESA 2 was initially based[,] creating a very strong inference that it was the fact of his departure that caused the change with CESA 2, not any alleged misconduct in the month before his departure.

The trial court also noted additional facts which suggested that termination of the CESA 2 relationship may have been caused by factors other than Hunt's disloyalty.[10] The trial court essentially found that competing

---

[10] The trial court stated:

[I]ts very clear that CESA 2 had significant concerns and problems with [InfoCor] that were entirely separate from anything that Hunt did, and, in fact, provide one explanation for why Hunt wanted to leave [InfoCor]. And its very clear to me that the defense has made a prima facie showing that it was Hunts departure and other problems that CESA 2 had with [InfoCor] that affected its

facts offered by the parties, not surprisingly, led to inferences favorable to each party's allegations. The trial court by its legal conclusion granting summary judgment against InfoCor appears to have accepted Tierney Brothers' inferences over those of InfoCor.

■

¶ 36. "Summary judgment is not to be a trial on affidavits and depositions." *Lecus v. American Mut. Ins. Co. of Boston*, 81 Wis. 2d 183, 189, 260 N.W.2d 241 (1977). In evaluating the evidence, we draw all reasonable inferences from the evidence in the light most favorable to the non-moving party. *Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473 (1980), *abrogated on other grounds by Olstad v. Microsoft Corp.*, 2005 WI 121, 284 Wis. 2d 224, 700 N.W.2d 139.

¶ 37. We conclude, after viewing the affidavits and other summary judgment submissions and all reasonable inferences drawn therefrom in the light most favorable to InfoCor, the non-moving party, that there are genuine issues of material fact concerning whether Hunt's alleged actions were a substantial factor causing the loss of InfoCor's relationship with CESA 2. *See Johnson*, 283 Wis. 2d 384, ¶ 30. For example, documents and affidavits submitted by InfoCor indicate the following. In early September 2006, Hunt informed Robert Gag, the sales manager at Tierney Brothers, that he would like to meet with him and together pay a visit to Hunt's largest customer, CESA 2. Hunt's email said that "CESA is really excited that I am leaving InfoCor and are looking forward to a new relationship with Tierney Brothers." Hunt attended this meeting and, according to Gag's deposition, did not advocate on

ultimate relationship with CESA 2 and not any diversion of some uncertain number of sales and not the September 13th meeting at CESA offices.

InfoCor's behalf at the meeting. At about the same time Hunt was arranging the CESA 2 meeting with Tierney Brothers, he emailed Gag about their "deal" (apparently referring to Hunt going to work for Tierney Brothers) and how the timing of the deal would affect some outstanding purchase orders, stating:

> I was wondering if you could give me some insight as to what Tierney Brothers['] time line is to make this deal final. Reason being, I have $30,000 in purchase orders from various school districts in Wisconsin sitting at CESA#2. I would be doing these schools a disservice if I sit on these orders. If you decide to pull the trigger when you are down here, you will be driving back with Purchase Orders in hand. If you feel that it might take a while to get this deal closed please let me know and I will release the orders thru InfoCor in hopes of saving face with loyal customers.

¶ 38.    Affidavits from two InfoCor executive vice-presidents indicate that Hunt may have interfered with their September 2006 efforts to improve InfoCor's relationship with CESA 2. In the affidavits, they state that when they learned that CESA 2 had concerns about InfoCor, they "wanted to travel to CESA 2 in [an] effort to stabilize the relationship" but were dissuaded by Hunt after he "assured [them] that he would take care of the situation with CESA 2 and there was no need for [them] to meet with CESA 2." It is for the jury to balance these allegations against Tierney Brothers' allegation that CESA 2 would have terminated the relationship regardless of Hunt's actions. For this reason, summary judgment dismissing InfoCor's damages claim related to its loss of CESA 2 business should not have been granted.

¶ 39.    Defendants assert that because "InfoCor's appeal makes no mention of the trial court's dismissal

of the damages claim against Tierney Brothers or the dismissal of the punitive damages claim," those claims are waived. InfoCor disagrees, asserting that neither of those issues was addressed by the trial court in its oral ruling and, therefore, "InfoCor's request for such damages survives should this Court reverse." We agree that the trial court did not address the issue of punitive damages, and we likewise have not considered the merits of that issue. We have considered the trial court's only ruling on damages and we are reversing the trial court on that issue. Therefore, InfoCor is free to continue to seek damages caused by the alleged torts as to which we are remanding these proceedings.

## CONCLUSION

¶ 40. We reverse the judgment dismissing InfoCor's claims against Tierney Brothers. We also reverse the non-final orders dismissing all but one of InfoCor's claims against Hunt, and the order dismissing InfoCor's claim for damages based on the loss of its business relationship with CESA 2. We remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment and orders reversed and cause remanded with directions.